Pratt v. Rawson.

LYDIA L. A. PRATT v. CHANDLER P. RAWSON.

*Bastardy. Experts. Impeachment. Discretion.*

The defendant introduced an expert to prove that certain letters and papers, afterwards put into the case, were in the handwriting of the prosecutrix. In commenting upon this testimony, the court instructed the jury that the "opinion of experts was evidence to be considered by them in connection with the other evidence bearing on the subject, but was not of itself conclusive; that the value of the rule of law, permitting them to testify their opinion, was grounded on the fact that generally such opinion was correct; that the value of such opinion was to be determined by the jury, having reference to the skill and competency which the witness manifested, in connection with the other evidence which was before them to be considered in determining whether the disputed letters were in the plaintiff's handwriting; that experts were not infallible; generally their opinion was reliable, but they sometimes were wrong; that the court had, in many instances, known them to hit right, and in some instances wrong." *Held*, that the defendant had no ground of exception to this charge.

After the prosecutrix had been examined and cross-examined as a witness, and rested, the defendant called witnesses to prove that she had made certain admissions as to who was the father of her child, and that certain letters and papers, which were afterwards put in to the case, were in her handwriting. After the defendant rested the prosecutrix was re-called and testified that she never made such admissions, and did not write the letters and papers in question. The defendant then offered to prove, by several witnesses, that the reputation of the prosecutrix for truth and veracity, in the community where she resided, was bad; the prosecutrix objected and the court excluded the evidence. *Held*, that its admission, in that stage of the trial, was a matter of discretion, and that its exclusion furnished no ground of exception.

PROSECUTION for bastardy, the overseer of the poor of Jamaica prosecuting. Trial by jury, at the April Term, 1867, BARRETT, J., presiding.

Upon the trial the prosecutrix testified that she was a single woman and had never been married; that she had a child which was begotten at her father's house in Jamaica, on the 14th day of May, 1864, and was born on the 17th day of February, 1865, and that the defendant was the father of said child. Upon cross-examination she testified, among other things, that she first saw the defendant at the house of one Newton Howard, in December, 1863; that in the latter part of January, 1864, he commenced keeping company with her, and visited her about as often as once a week until the last of March or first of April, following; that he made improper advances towards

her at some of his visits, prior to the last; that at the last visit he proposed to have sexual intercourse with her, which she declined; that he told her unless she acceded to his request, in that behalf, he should cease to visit her; that she declined to accede to his request, and he ceased to visit her any more as a suitor; that he was at her father's house at the time said child was begotten, and called at the door for a drink of water the 19th day of June, following, when on a fishing excursion, and that other than upon these occasions she had had no communication or conversation with him since he ceased to visit her, as before stated; that she knew Mrs. Cornelia Kingsbury, wife of Daniel O. Kingsbury; that said Cornelia visited at her father's house in September, 1864, when she was at home, and that something was said about her being with child; that the most that was said was that Mrs. Kingsbury said to her that folks on the other side of the river said it was Judson Rawson's child, and that she replied that if folks on the other side of the river said so, it must be so; that she remembered being at the house of said Cornelia just before the September Term, 1866, of this court; that she did not remember of, at that time, telling said Cornelia that she did not care what else she testified to in this case, if she would not testify that she had told the said Cornelia that Judson Rawson was the father of her child. She was shown certain letters and envelopes which she conceded she wrote. Upon this evidence the prosecution rested their case.

The defendant himself testified that he was not at the house of the father of the prosecutrix on the 14th day of May, 1864, and never had sexual intercourse with her; that he received certain other letters and papers of Fanny Wood, formerly Fanny Perham.

The defendant also introduced evidence tending to show that the prosecutrix, during the winter and spring of 1864, was with Judson Rawson, who was a married man, at various times and places, under such circumstances as to create a probability that he was having improper intimacy and intercourse with her. Among other witnesses the defendant called Mrs. Lydia Farmer, who testified that in the spring of 1864, on one occasion, the prosecutrix was at her house; that while the prosecutrix was there she saw a man a little way off

in the edge of the sugar place ; that she called the attention of the prosecutrix to the man, and that the prosecutrix immediately started for home, and when she got out of doors waved her handkerchief to the man, by way of making a signal to him ; that when the man saw it he came down and met and went along with her.

The defendant also called said Cornelia Kingsbury, who testified that she was acquainted with the prosecutrix, and visited her at her father's house in September, 1864, and stayed over night ; that while there the subject of the pregnancy of the prosecutrix was talked about between her and the prosecutrix ; that the prosecutrix, after some hesitation, told her that said Judson Rawson was the father of the child ; that it was begotten in the room in which they were then sitting, in her father's house ; that she had had intercourse with said Judson previous to that time ; that the first time said Judson had intercourse with her was at his house, on an occasion when she stayed there over night ; that he told his wife that he was going away and should not be back until late, and that she need not sit up for him ; that he went away, and after his wife was gone to bed he came through the shed up into the room where the prosecutrix was in bed, and had intercourse with her.

The defendant also called one Isaac N. Pike as a witness, who, among other things, testified that he had been acquainted with the prosecutrix ever since she was small ; had always known her handwriting, and had sometimes set copies for her, and had, on several occasions, carried letters for her to one Fanny Perham, afterwards Fanny Wood ; he was shown certain letters and papers which he testified he thought were her handwriting. The defendant also called Silas M. Waite, who testified that for ten years last past he had been cashier of the National Bank, at Brattleboro, and was in the habit of examining signatures for the purpose of detecting forgeries ; he was shown papers which were conceded to be genuine, and was also shown certain other papers which he testified were written by the same person who wrote the papers conceded to be given.

The defendant read in evidence the letters and papers aforesaid.

The defendant rested his case, and the prosecution recalled the

prosecutrix, who testified that she did not write the letters and papers aforesaid ; that at the time said Cornelia Kingsbury visited her and had the conversation with her, before alluded to, in September, 1864, the having intercourse by her with Judson Rawson, at his house, was not mentioned ; that no such thing ever occurred, and that nothing was said by her to Mrs. Kingsbury about the child having been begotten by Judson Rawson in the room where they then were ; that she was never intimately acquainted with said Mrs. Kingsbury, and never confided secrets of any kind to her ; that she heard the testimony of Mrs. Farmer, and did not make signals to said Judson Rawson, as Mrs. Farmer testified that she did ; that she never contemplated setting up a milliner's shop, and never wrote to Fanny Perham nor any one else that she intended to do so.

The prosecution called Eva A. Pratt, sister of the prosecutrix, who testified that the defendant was at their house on the said 14th day of May, 1864.

The prosecution rested their case, and the defendant called several witnesses, and offered to prove by them that the general reputation of the prosecutrix for truth and veracity, in the community where she resided, was bad,—to which the counsel for the prosecution objected. The court sustained the objection and excluded the evidence so offered,—to which the defendant excepted.

As to the testimony of experts, the court instructed the jury, in substance, that the law permitted men, who had opportunity by education and practice for acquiring peculiar skill in judging of handwriting, to testify their opinion as to the genuineness or identity of specimens submitted to their inspection. Such opinion was evidence to be considered by the jury, in connection with the other evidence bearing on the subject, but was not of itself conclusive ; that the rule of law permitting them to testify their opinion, was grounded on the fact that generally such opinion was correct ; that the value of such opinion was to be determined by the jury, having reference to the skill and competency which the witness manifested in connection with the other evidence, which was before them to be considered in determining whether the disputed letters were in the plaintiff's handwriting ; that experts were not infallible, generally their opinion was

Pratt *v.* Rawson.

reliable, but they sometimes were wrong; that the court had, in many instances, known them to hit right, and in some instances wrong,—to this the defendant excepted.

Verdict for the plaintiff.

*H. H. Wheeler*, for the defendant.

I. The defendant had a right to impeach the general character for truth of any witness who testified to material facts against him. This was not a privilege which the court could grant or refuse in its discretion, but it was an absolute right. Swift's Ev. 143; 1 Green. Ev. § 461; *Pierce* v. *Gilson*, 9 Vt. 216.

II. The charge as to the testimony of the experts was erroneous. The *truthfulness* of the experts was wholly ignored. Their opinions were submitted to the jury to be determined upon by them upon the other evidence without reference to their testimony. If the jury thought the opinions were correct upon the other evidence they were to consider them, if not, they were to lay them aside.

*Chas. N. Davenport* and *A. Stoddard*, for the plaintiff.

The exception to the charge of the court upon the testimony of the experts is not well taken. 1 Redfield on Wills, 101, 105, and 154, 155.

We do not question the right of the defendant, at the proper stage of the trial, to impeach the reputation of the plaintiff for truth; but we do understand, that the *order* and *manner* of introducing testimony is under the control, and subject to the discretion of the court, and the exercise of judicial discretion is never the subject of exception. *Pingrey* v. *Washburn*, 1 Aik. 265; *Mattocks* v. *Stearns*, 9 Vt. 326; *Hopkinson* v. *Steel*, 12 Vt. 584; *Northfield* v. *Plymouth*, 20 Vt. 582; *Goss* v. *Turner*, 21 Vt. 437; *Kent* v. *Lincoln*, 32 Vt. 598.

The rule of practice ought to be, if it is not, such as would require a party, before he rests his case, to impeach the general reputation of all the other party's witnesses, who have been previously examined. If he omits to do so, he should be treated as having waived his privilege to impeach, even though the witness should be subsequently recalled. *Kent* v. *Lincoln*, 32 Vt. 598.

The opinion of the court was delivered by

PROUT, J.　Upon the argument, but two exceptions taken to the dicisions of the county court are relied upon by the defendant.

I.　It is claimed that the charge to the jury as to the testimony of the experts, introduced by the defendant, was erroneous.　Three witnesses were called for the purpose of proving that certain papers produced on the trial, were in the handwriting of the prosecutrix. The opinion of one of them, called to testify to this point, is based upon his acquaintance with the prosecutrix, and his knowledge of her handwriting; of the other, upon his habit and experience, as cashier of a bank, in examining signatures for the purpose of detecting forgeries.　It is said the truthfulness of these witnesses was ignored by the court, and that their opinion, with respect to the inquiry to which their evidence related, was submitted to be determined by the jury upon other evidence than their own testimony.　We do not understand the charge in this sense, but only as relating to the reliance to be placed by the jury upon it.　The judge expressly told the jury, that the law permitted the use of the evidence; that the opinion of the witnesses was to be considered by them in connection with the other evidence in the case, but that it was not conclusive; and what is said in the subsequent part of the charge does not improperly qualify its legitimate force and effect.　If the judge had gone further, and told the jury, what to be sure is unusual, as expressed in an early case, that it was entitled to but little weight as proof of the disputed fact, but, after all, leaving it for them to weigh and consider, it would not have been an error.

II.　The defendant insists that his impeaching testimony was improperly excluded.　As to a party's right to impeach the witness of his adversary, there is no doubt.　The question in this case is, when, in the progress of the trial, should he avail himself of this right.　There is a limit to all inquiry, as to material facts, in the ordinary course of a trial, and the party's right is affected by long and well established rules of practice, which may, or may not be, applied and enforced, in the discretion of the court.　The first step taken in this case, in the county court, was putting the prosecutrix on the stand.　She testified, making out, as she deemed, a *prima facie* case.　She was cross-examined by the defendant's counsel in

relation to facts, which, if established, discredited or impeached her. This was the effort on the cross-examination, and the object of it; and this was the tendency of the defendant's evidence, introduced after she left the stand and rested her case, with the exception, possibly, of the evidence of the experts. Upon the close of the defendant's testimony, the prosecutrix' was recalled, in her own behalf, and testified only in relation to facts, circumstances and admissions made material by the defendant, whose evidence was of the character and tendency stated, but she testifying to no new matter or fact except what had been introduced into the case by the defendant, and to which he did not think proper to call the attention of the prosecutrix, or inquire about, when she was first under examination. In this state of the case, the defendant's right to impeach the witness stands upon the same ground it would, had the witness been cross-examined and re-examined in her own behalf in relation to the facts, when she was first on the stand. If this had been the order of putting in the evidence, the defendant should have put in all his testimony in answer to the opening testimony of the prosecutrix. But as the case really proceeded, the prosecutrix had testified to the material facts directly relating to the issue, and upon the close of her evidence the defendant had ample opportunity of answering it, and of introducing his impeaching testimony. In all cases, the court has, to a certain extent, a discretionary power, and may control the order in which the evidence shall be introduced, for the purpose of placing the parties upon an equal footing in respect to the trial, so that neither shall gain an " unjust or undue advantage." In the exercise of this discretionary control, the court are guided by the facts and circumstances existing, relating to the trial, and if it is not so exercised as to deprive a party of a reasonable opportunity of availing himself of his evidence or of his legal right in this respect, no ground of exception exists. In this case the defendant's offer was, we consider, addressed to the discretion of the court, and it appearing that he had the opportunity to introduce the evidence, as accorded under the rules of practice, no exception lies to the decision of the court refusing to admit it. *Pingrey* v. *Washburn,* 1 Aik. ; *Kent* v. *Lincoln,* 32 Vt. 591.

The judgment of the county court is affirmed.