## STATE v. BRIDGMAN.

*Indictment.  Arrest of Judgment.  Adultery.  Evidence.  Right to Specification of the Crime.  Husband and Wife.*

The indictment alleged that the respondent, on, &c., at &c., then and there being a married man, and having a wife then living, did carnally know C., she then and there being a married woman, and the wife of L., of, &c., who was then living, and not the wife of the respondent, and with her did then and there commit the crime of adultery by carnally knowing her, &c.  *Held*, good on motion in arrest.

When the indictment sets forth the offence with common-law strictness and certainty, the respondent is not, as matter of legal right, entitled to any further specification of the crime for which he is tried.  Whether specifications shall be furnished or not, and if furnished, how the trial shall proceed thereon, rests, unless the respondent's legal rights are thereby abridged, wholly in the discretion of the court, and is not revisable in the Supreme Court.

Upon an indictment for adultery, the husband of the woman with whom the act was committed, may testify to circumstances that do not directly criminate, but only tend to criminate, her.  Thus, the prosecution having shown, that after the respondent had been seen to enter the woman's shop, the husband was seen to try unsuccessfully to enter, and the respondent, shortly followed by the woman, soon after to come out, it was *held* admissible for the husband to testify that he had sometimes tried the door and found it locked.

Evidence of other acts of improper familiarity and adultery between the parties to the alleged offense, continuing from before until after the offence charged, and after indictment found, is admissible, although it proves other and distinct offenses, to show the true relation of the parties to each other, — to show that the restraints and safeguards of common deportment and conventionality, and of the natural modesty that is presumed to exist, have been broken through and displaced by the adulterous disposition and the habits of adulterous intercourse.

Certain witnesses for the prosecution having testified as to the act upon which the prosecution had elected to rely for a conviction, otherwise than as they had informed the prosecuting attorney they would, and otherwise than as they had on another trial involving the same question, the prosecuting attorney requested to be allowed to ask the jury to convict upon another act of the same kind, evidence of which had been introduced.  The court, who had heard the testimony on the other trial, granted the request, saying in explanation, in presence of the jury but not to

them, that they granted it because of the change in the testimony and the manner in which it was given, which had satisfied them that the witnesses had been influenced by some one. *Held*; no error.

INDICTMENT FOR ADULTERY. The indictment alleged, with the ordinary particularity as to time and place, that the respondent, being a married man, and having a wife then living, did carnally know Chastina W. Warren, she then being a married woman and the wife of Leonard E. Warren, who was then living, and not the wife of the respondent, and with her did commit the crime of adultery by carnally knowing her. Plea, not guilty, and trial by jury, December Term, 1874, Caledonia County, Ross, J., presiding.

At the time of the alleged commission of the offence charged, the respondent and the said Chastina were married, as alleged in the indictment. Afterwards, the said Leonard petitioned for a divorce from the said Chastina, which was granted; but the case was carried to the Supreme Court upon exceptions, and, at the time of this trial, was there pending.

When the case was assigned for trial, and again before the trial began, and also again after the jury were impanelled and the prosecution had made the opening statement, the respondent's counsel asked that the prosecution be ordered to give a bill of particulars, specifying the act to be relied upon for a conviction. The court refused so to order, but ordered the state's attorney to elect the specific act upon which he would rely. The state's attorney replied that he could specify two acts, upon one of which he would rely, which he accordingly did in writing. One of the acts so specified, committed in April, 1873, was to be shown by James Walton and C. W. Alexander, and was the act relied upon in the proceedings for divorce, in which it had been shown by the same witnesses; the other act was committed in the following June or July, and was to be shown by John H. Drew. Afterwards, and before the introduction of any testimony bearing upon the main charge, the prosecution elected to rely upon the act to be shown by Walton and Alexander. To the refusal of the court to order the prosecution to furnish a bill of particulars, the respondent excepted.

Before showing the act relied upon, the prosecution offered evidence tending to show a great many acts of familiarity, and several acts of adultery, between the respondent and the said Chastina, before the commission of the act elected, and beginning six or seven years before the commission thereof. To its admission the respondent objected, but it was admitted; to which the respondent excepted. At the same time the prosecution offered evidence tending to show that the relation of intimacy between the respondent and the said Chastina continued after the commission of the act elected, and after this indictment was found. To its admission the respondent objected, but it was admitted; to which the respondent excepted.

The prosecution, after introducing testimony tending to show that on one or more occasions after the respondent had been seen to go into the shop of the said Chastina, the said Leonard was seen to try to get in, without success, and the respondent soon after to come out, shortly followed by the said Chastina, — produced the said Leonard as a witness, who testified that sometimes when he had been in search of the said Chastina, he had been to her shop door and found it locked; that he could tell no particular time, but presumed he had been there both by day and by night, but could not say that he had been there by day. He did not pretend to have seen the respondent there at such times. To the admission of this testimony the respondent excepted.

When Walton and Alexander were called to testify, their manner was that of reluctant witnesses, and their testimony as to their recognition of the respondent and the said Chastina as the persons engaged in the act relied upon, to which they testified, was very much weaker than it was on the hearing of the petition for divorce; and the state's attorney was allowed to ask them leading questions; to which the respondent excepted. The state's attorney then stated to the court that they had not testified as they had informed him they would, nor as they did in the divorce suit, and requested to be allowed to ask the jury to convict the respondent on the act testified to by Drew, who had testified that he saw the respondent and the said Chastina in the act of adultery

on the last of June or first of July, 1873. The court, having heard their previous testimony, granted the request, saying, in explanation, in presence of the jury but not to them, that the request was granted because of the marked change in the witnesses, both in the testimony and in the manner of testifying, which had satisfied the court that they had been influenced by some one; but the court did not know nor say who it was. To the granting of the request and the remark of the court, the respondent excepted. After verdict, the respondent moved in arrest, for that the indictment was insufficient; but the motion was overruled; to which the respondent excepted.

*Belden & Ide,* for the respondent, cited *State* v. *Phelps*, 2 Tyl. 374; *State* v. *Bacon*, 7 Vt. 219; *Manchester* v. *Manchester*, 24 Vt. 649; *State* v. *Conlin*, 27 Vt. 318; *Cram, admr.* v. *Cram*, 33 Vt. 15; *State* v. *Rowe*, 43 Vt. 265; *Greenwood* v. *Smith*, 45 Vt. 37; *Commonwealth* v. *Thrasher*, 11 Gray, 450; *Commonwealth* v. *Pierce*, 11 Gray, 447; *Fitch* v. *Hill*, 11 Mass. 286; *Commonwealth* v. *Snelling*, 15 Pick. 321; *Lovell* v. *State*, 12 Ind. 18; *State* v. *Bates*, 10 Conn. 373; *Rex* v. *Inhabitants of Cliviger*, 2 T. R. 263; *Dean* v. *Brown*, 28 Conn. 352; *People* v. *Barrett*, 1 Johns. 66; *Rex* v. *Mathews*, 5 T. R. 163; 1 Lead. Crim. Cas. 187; 2 Stark. Ev. 709; 1 Phil. Ev. 69, n. 42.

*The State's Attorney,* for the state, cited *State* v. *Wallace*, 9 N. H. 515; *State* v. *Marvin*, 35 N. H. 23; *State* v. *Colton*, 4 Fost. 143; *Commonwealth* v. *Call*, 21 Pick. 509; *Commonwealth* v. *Durfee*, 100 Mass. 146; *Thayer* v. *Thayer*, 101 Mass. 111; *Green* v. *Gould*, 3 Allen, 465; *People* v. *Hanness*, 5 Mich. 305; *Lawson* v. *State*, 20 Ala. 66; *State* v. *Tull*, 37 Me. 246; *York* v. *Pease*, 2 Gray, 282; *Sears* v. *Shefer*, 1 Barb. 408; *Cheney* v. *Arnold*, 18 Barb. 434; *Bank of Northern Liberties* v. *Davis*, 6 Watts & S. 285; *Town* v. *Alford*, 2 Ala. 378; *State* v. *Watrous*, 13 Ia. 489; *Commonwealth* v. *McGowan*, 1 Met. (Ky.) 368; *State* v. *Wimberly*, 3 McCord, 190; *State* v. *Honey*, 1 Haney (N. C.), 460; *State* v. *Paine*, 1 Ind. 163; 2 Stark. Ev. 441; 3 Whar. Crim. Law, s. 2653; 1 Greenl. Ev. s. 435; 1 Bishop Crim. Proced. s. 205 *et seq.*

The opinion of the court was delivered by

WHEELER, J.   On the trial of an indictment like this, in which the offence is set forth with common-law strictness and certainty, the respondent is not, as a matter of legal right, entitled to any further specification of the crime for which he is tried.   In prosecutions like those under the prohibitory liquor law, and perhaps some others, where a statutory form is used that only charges the respondent generally with committing some offence, without specifying the time, place, or circumstances of any particular one, the respondent is informed only that he is to be tried for one or several of these, without stating which, and is not thereby informed of the "cause and nature of the accusation," as he has a constitutional right to demand, and a more full specification is necessary.   But here, the indictment sets forth with whom the offence was committed, and every legal element that constitutes it, and fully answers the requirements of the constitution and laws.   The court may, in the exercise of its discretion, and in view of the exigencies of any case, require one to be furnished; but it is wholly a matter of discretion, and the refusal of one when asked, or the enlargement, amendment, or alteration of one when required and furnished, and the course and order of the trial upon it as furnished or as altered, or without any, are, if the respondent is not cut off from any legal right, all matters of discretion, and not revisable in this court.   *Pratt* v. *Rawson*, 40 Vt. 183.

There is no doubt but that in the early history of the common law, husbands and wives were, on grounds of supposed public policy, strictly excluded from testifying to any facts that would even only tend to criminate each other, whoever might be on trial, except in some cases where wives were, from necessity, permitted to testify against their husbands for their own personal protection.   Co. Litt. 66; *Rex* v. *Cliviger*, 2 T. R. 263.   In 2 Stark. Ev. 709, it is stated: " It has indeed been said, that the rule applies to all evidence which tends collaterally, and by its connection with some other circumstances, to criminate the husband or wife of the witness, although the fact itself, abstractly considered, involves no criminality, because it may lead to a crim-

inal charge and to the apprehension of the other ; and therefore, that if the evidence tend to criminate the other, it is not admissible." And, referring to *Rex* v. *Cliviger*, he says, the rule there seemed to have been carried further than principle would warrant, as the evidence induced no breach of that confidence between married persons that ought to be held sacred, and that neither the evidence nor any decision upon it, could be afterwards used against the other party. Many difficulties grew out of the strictness of the rule, and in *Rex* v. *All Saints*, 6 M. & S. 194, it was essentially modified, and the testimony of the wife admitted, although it tended to show that the husband was guilty of bigamy. The court of King's Bench held in that case, that the evidence was admissible, since it did not directly criminate the husband, and could not afterwards be used against him, nor made the groundwork of any future prosecution. This doctrine, although contrary to the former rule, became settled in England. Roscoe Crim. Ev. 114 ; 2 Stark. Ev. 711. And evidence of the husband or wife that did not directly but only tended to criminate the other, was not excluded on the ground of public policy. This rule seems to have been followed by several cases and some authors in this country. In *State* v. *Gardner*, 1 Root, 485, the husband was offered, as the case states, to prove the *fact* of adultery with the wife, and excluded. In 1 Greenl. Ev. s. 342, it is said : " But though the husband and wife are not admissible as witnesses against each other, when either is directly interested in the event of the proceedings, whether civil or criminal ; yet, in *collateral proceedings*, not immediately affecting their mutual interests, their evidence is receivable, notwithstanding it may *tend to criminate*, or may contradict, the other, or may subject the other to a legal demand." In *State* v. *Welch*, 26 Me. 30, the husband, as the case is stated in the opinion, was admitted on the trial below, to testify to the *act* of adultery with the wife ; and it was held that this was error, and the judgment was reversed, as it directly criminated her ; but the rule, that he might testify to what would only tend to criminate her, in collateral cases, was recognized. This is stated to have been the rule in *Stewart* v. *Johnson*, 3 Harr. (N. J.) 87, and may have been the one followed in *Common-*

*wealth* v. *Gordon*, 2 Brewster Cas. (Penn.), 569, although it does not expressly appear that it was. In Best Ev. (Wood's ed.), 311, it is said that the rule only applied where the husband or wife was party to the suit in which the other was called as a witness, and did not extend to collateral proceedings between third parties. And in Cowen and Hill's notes to 1 Phil. Ev. *89, it is laid down that even the wife is receivable to show the criminality of the husband, except in cases where her evidence would influence a suit or prosecution against him. And there are many adjudged cases that seem to have gone upon the ground that the husband or wife should be excluded only when the other is a party. In *Commonwealth* v. *Easland*, 1 Mass. 15, the respondent being on trial on a joint indictment against him and four others for an assault, STRONG, SEDGWICK, SEWALL, and THATCHER, JJ., said they would try the others separately, to permit his wife to testify for them. And in *State* v. *Anthony*, 1 McCord, 285, the respondent had been tried separately on a joint indictment against him and his son for murder, and the testimony of the son's wife, offered by him, excluded. The court reversed the judgment, to permit her to testify, as NOTT, J., six others concurring, said : " For both being principals, and each individually responsible for the part which he took in the transaction, the conviction or acquittal of one could be no evidence of the guilt or innocence of the other." In *Moffits* v. *State*, 2 Humph. (Tenn.) 99, there was an indictment against five, two of whom were on trial for an assault, and another was one Taylor, who had not been tried. The witnesses for the state had testified that the prosecutor was taken out of bed, carried to a forest, bound to a tree, and severely scourged with rods by five disguised men, and that two of them were the respondents. Taylor's wife was then offered as a witness for the respondents, and excluded, and the respondents appealed. The judgment was reversed for that exclusion, on the ground that the husband had no direct interest in the event of that trial, and that a judgment of acquittal or conviction of the respondents on that trial could not be used on his. The testimony of the husband to the fact of adultery with the wife, can be excluded only on the ground of public policy, and not because the respondent had any

right to commit adultery with the wife in presence of the husband, or because such adultery would be innocent. And in the note to Phil. Ev. before cited, it is said that the notion of the testimony of husbands and wives being inadmissible from policy, seems to be pretty much given up in England. In *State* v. *Marvin*, 35 N. H. 28, on the trial of an indictment for adultery against the man, the husband of the woman testified to the fact without objection being made. Afterwards objection was taken to further testimony of the husband, but it was admitted, and held on review in the higher court to be admissible, without any intimation that the whole was not admissible. And in *State* v. *Rood*, 12 Vt. 396, on trial of the man for an offence under the blanket act, the husband of the woman was admitted to testify to his marriage with the woman, and no objection was raised.

In this case, the respondent, Bridgman, was indicted separately, and on trial separately, so far as he had any right to raise this question, and the question arising on his exception is the only one under review as to this part of the case. His trial was, as to the wife of the witness Warren, wholly a collateral proceeding. No judgment of conviction or acquittal in it could be used against or for her, nor in any way directly affect her. The circumstances testified to by her husband did not directly criminate her. Alone they were innocent enough, and of no importance except by proof of other circumstances, and the combination of these circumstances with the others. If the ancient rule was to be applied here, the admission of this testimony would be found to be erroneous. But by the rule as at first modified in England, and as it has been almost universally recognized in this country, the testimony received was admissible. This is all that is necessary to be decided now as to this part of this case.

Another question arising in the case is as to the admissibility of evidence of other acts of improper familiarity and adultery between the parties to the alleged offence, continuing from before to after the main offence, and after the indictment. Several grounds of exception were named, but the only ones relied upon in argument, are those that raise the question, whether the evidence was

27

admissible at all, and that is the only question to be considered on this part of the case.

There is no doubt nor question but, on the trial of criminal offences or civil cases, the general rule is, that the evidence is confined to proof only of the particular act charged or claim sued for. It is equally beyond doubt or question, that in some of either class of cases, proof of other acts before and after the main one that would of themselves constitute indictable crimes or causes of action recoverable for, is admissible and proper to be considered in support of the evidence of the main charge or cause of action ; as, in actions and prosecutions for libel, proof of other ibels on the same party prior and subsequent to the one on trial, is admissible. 2 Stark. Slander, 56, 57. *The King* v. *Pearce,* Peake's Cases, 75 ; *Charlton* v. *Barrett,* Ib. 22 ; *Rustell* v. *Macquister,* 1 Campb. 49, n. ; *Stuart* v. *Lovell,* 2 Stark. 84 ; *Chubb* v. *Westley,* 6 C. & P. 436. So, on trial of an indictment for receiving stolen goods, acts of receiving at other distinct times have been received. *Dunn's Case,* 1 Moody, C. C. 150 ; Roscoe Crim. Ev. 70. And on indictments for knowingly uttering forged instruments and counterfeit coin, evidence of other similar acts, although it would prove other distinct offences, is admissible to prove guilty knowledge. *Ball's Case,* 1 Campb. 324 ; *Wylie's Case,* 1 N. R. 92 ; Roscoe, 66, 67. So, on an indictment for maliciously shooting, evidence that the respondent shot at the prosecutor intentionally about a quarter of an hour before, was objected to, because it would be evidence of two distinct felonies, but Mr. Justice BURROUGH said that was unavoidable, as it seemed to be one continued transaction in the prosecution of the malicious intent of the prisoner. *Boke's Case,* Russ. & Ry. 531 ; Roscoe, 70. In all these cases, the evidence was received because it would tend to support the main charge as to material ingredients, and could not properly be excluded, though it would prove distinct offences.

The offence charged in this case cannot, ordinarily, be committed till the restraints of natural modesty and the safeguards of common deportment and conventionality have been overcome by gradual approaches, and the relations of the parties have been

changed from those usually existing between the sexes, to the most intimate. On a trial for it, the prosecutor has to overcome the presumption that these restraints and safeguards have not been broken over. To do this, it is always proper to show what is spoken of in 2 Greenl. Ev. s. 41, as an adulterous disposition, and in s. 44, as a habit of adulterous intercourse. As was said by PERLEY, C. J., in *State* v. *Marvin*, 35 N. H. 28, "A suspicious intimacy of this sort is competent evidence on trials for this offence, though it does not apply directly to the particular fact charged as the foundation of the prosecution." And by the court in *Gardner* v. *Madeira*, 2 Yeates (Penn.), 466, that after "laying a reasonable ground to infer an improper connection between the parties within the limited period, the court will be more liberal afterward in receiving other evidence of indecent conduct at different times, tending to show the criminal views and acts of the parties." Thus it appears that the true relation of the parties to each other in this respect, is very material and proper to be shown ; and there could be nothing more potent, to show that no barrier of modesty or manners was remaining between the parties, and to show the real relation between them, than the fact that they were in the habit of committing the act from time to time. It was in this view that the act three years previous to the one on trial, was held admissible in *Thayer* v. *Davis*, 38 Vt. 163. On this subject it was said in that case by KELLOGG, J., in delivering the opinion of the court, that "the previous familiarity or intimacy existing between parties, was a circumstance bearing on the probability of the alleged sexual intercourse that is the subject of the prosecution. It tended to illustrate the relation of the parties to each other at the time when, as is claimed by the prosecutrix, the child to which she gave birth was begotten ; and this relation has always been considered proper evidence, as well for one party as the other." The evidence in this case, as to prior acts, was of precisely the same class as that admitted in that case, and no reason is apparent why it would not be as admissible in this case as in that, except the one urged as to the acts being subjects for other prosecutions. But it appears from the books and cases already cited, that if acts that would support other

prosecutions have any legitimate bearing as to whether the offense on trial was committed or not, they are to be admitted, notwithstanding that objection. And as this evidence was legitimately material to the trial of the main offense, it was admissible. It is further urged that if this evidence of prior acts is admissible, there is a distinction between it and that of subsequent acts, and that the latter is not admissible. But this relation of intimacy, as before suggested, does not usually take place suddenly, and the fact of its existence at any time to that extent that intercourse was actually had, would be some evidence that the relation had been existing previously ; and offered with evidence of other acts so as to show the relation to be continuous through a period covering the time in question, would be quite material and convincing. The important question is, whether the facts would be legitimately material, and if they were, then whether prior or subsequent, would be of no importance. In Wharton's Crim. Law, 465, it is laid down that evidence of guilt subsequent to finding the indictment is inadmissible, unless to corroborate facts proved to have taken place before ; and that is all this evidence was admitted for here. It must be for the reason that the relation of intimacy between a man and a woman is material and important in determining the *character* of sexual intercourse had between them, that evidence of like intercourse between them is admissible on an indictment for rape, and evidence of like acts of intercourse between her and other men is not. Archbold Pl. & Ev. 69 ; 1 Phil. Ev. Cow. & Hill & Edw. notes, 762 ; Wharton Am. Crim. Law, 522. Not because it is in any wise more lawful for a man to commit rape upon a woman with whom he has had such intercourse, but because from the relations between them, it is less likely that the intercourse was forcible. It was substantially held in *Commonwealth* v. *Merriam*, 14 Pick. 518, and recognized in *Commonwealth* v. *Horton*, 2 Gray, 254, and *Commonwealth* v. *Pierce*, 11 Gray, 447, that such evidence is material and important in trials for adultery ; but in the two latter cases it was held to be inadmissible for other reasons. But in *Thayer* v. *Thayer*, 101 Mass. 111, all these decisions of the Supreme Court of Massachusetts are reviewed in a masterly way, and without disagreeing

with the previous cases in principle, but only in the application of principles, it was fully held that evidence of familiarities and acts of adultery, both before and after the main offence, were admissible and proper to be considered on trial of the main offence. And the reasoning of COLT, J., in that case, seems unanswerable. There are other cases where evidence that amounts to proof of distinct offences has been held inadmissible, chiefly upon the ground that proof of offences not alleged is improper; but it is clearly seen that when proof of distinct offences is material, it is held admissible in other cases, and on principle should be in this. So it is not considered that there was error in the admission of this evidence.

The remark of the court about the testimony of some of the witnesses on a previous occasion, although in the hearing of the jury, was not made as a statement to them of anything to act upon, but merely as a reason for the action of the court itself, and the jury probably so understood it. There was no error in law about it.

The only defects urged to the indictment, are defects, if they are so at all, in respect to matters of form merely, which are helped out by the statute. Laws of 1870, p. 23.

Exceptions overruled.