## STATE v. LYMAN POTTER.

*Evidence. Presumption. Proof of Marriage. Adultery. Charge.* Corpus Delicti. *Practice.*

On trial on indictment for adultery, the State, to prove marriage of respondent, offered in evidence a certified copy of a record in the town clerk's office, q. v., which purported to be a record, not of a copy of the minister's record, but of the minister's certificate of the marriage, which certified the fact and date of marriage, and stated the names, age, and residence of the parties, the occupation of the respondent and the name of the minister, but did not state those items in separate columns. The copy contained no certification of what it was a copy, nor of what town the clerk whose name was signed thereto was clerk, nor of the name of the town wherein the record was made. *Held*, that under the maxim *omnia præsumuntur*, &c., it was to be presumed that the record was made in, and that the clerk was the clerk of, the proper town ; and that the record contained all that was necessary under the statute to make it authentic and valid as evidence of the fact of marriage.

The charge herein, q. v., *held* to be correct.

The State, having proved that the *particeps*, an unmarried female, had borne a child since the time alleged as the time of the commission of the act, and having introduced without objection evidence tending to prove, but not necessarily proving, the commission of the act by the respondent, offered evidence tending to show the commission of like acts between the same parties at a time anterior to the time when the Statute of Limitations began to run. *Held*, admissible in connection with the other evidence, to show that respondent was a party to the act proved to have been committed.

The order of the introduction of evidence is often in the discretion of the court.

INDICTMENT FOR ADULTERY. Plea, not guilty, and trial by jury, September Term, 1878, REDFIELD, J., presiding.

The State, to prove the marriage of the respondent, introduced in evidence a certified copy of record in the Plainfield town clerk's office, as follows:

STATE OF VERMONT, Washington County, ss. Be it remembered, that at Plainfield in the county aforesaid, on this 4th day of December, in the year of our Lord, 1866, Mr. Lyman Potter, of Plainfield, in the County of Washington and State of Vermont, a farmer by occupation, and of the age of 46 years, and Mrs. Laura A. Williams, of Plainfield, in the County of Washington and State of Vermont, of the age of 38 years, were duly joined in marriage by Mr. C. W. Winch, minister of the gospel.

A true record. Attest, W. B. PAGE, Town Clerk.

I hereby certify that the foregoing is a true copy as appears on record now in my office. Attest, W. B. PAGE, Town Clerk.

To the admission of that copy the respondent objected, but it was admitted; to which the respondent excepted.

The state offered no direct proof of the commission of the act alleged within three years before the finding of the indictment. The principal evidence tending to raise a presumption of commission of the act within that time was the testimony of Peter Wheeler and his wife, and E. B. Smith. Their testimony all together tended to show that the respondent and his unmarried step-daughter had for a number of years, and down to a time within three years of the finding of the indictment, occupied the same sleeping room, while the respondent's wife, during a part of the time, and until she went away and left the respondent, occupied a room by herself in another part of the house; that the girl had there borne three children, one on January 8, 1872, one on March 2, 1874, and one on September 2, 1876; that on each of those occasions the respondent procured the attendance of the doctor and the nurses, and paid them for their services; that he was in attendance when the children were born, and took one of them from the nurse's arms and held it; that he habitually called the children his, and taught them to call him father; that after the wife went away the girl remained and kept house for the respondent; and that the respondent had said that he had not been

to his wife's bed-room since the second child was born, and that he could have sexual intercourse with the girl within six feet of his wife, without his wife's knowledge, and had made other declarations of like import. This testimony was in some points supported by the testimony of other witnesses.

The State then offered the testimony of Alexander St. Cyr, tending to show that five years before the time of trial, he saw the respondent and a girl that he called the girl with whom the act in question was alleged to have been committed, in a field, near some bushes ; that the respondent was about moving away, and the girl was lying in a posture that indicated that there had been sexual connection : and also the testimony of Kate St. Cyr and Ida Osgood, tending to show that six or seven years before the time of trial, they saw the respondent and the girl lying on the grass, in a field, in such a position as to indicate a sexual connection between them. To the admission of this testimony the respondent objected, but it was admitted ; to which the respondent excepted.

The respondent requested the court to charge as follows :

1.  That the respondent could not be convicted without proof of some act within three years before the finding of the indictment.

2.  That proof of sexual connection seven years before, was no proof of commission of the act alleged within three years ; that the State must prove the act of adultery by some one, and that then evidence of acts of familiarity might tend to fix the crime on the respondent, but not before.

3.  That the fact that the children were born in the respondent's house had no tendency to prove the act alleged.

4.  That the testimony of the St. Cyrs and Ida Osgood was no evidence that the act alleged was committed within three years, as it only raised a presumption, at most, of an act at the time to which it related ; and a presumption could not be founded on a presumption.

5.  That the State had introduced no evidence that the crime alleged had been committed by any one.

6.  That as the State had failed to prove an act, the testimony

of the St. Cyrs and Ida Osgood should not be considered for any purpose.

The court refused so to charge, but, after stating some of the evidence adduced, charged that the inquiry was, whether the respondent had had sexual intercourse with the girl within three years of the finding of the indictment; that there was no direct evidence of the commission of the act, but that evidence that the muniments that protect modest and virtuous females had been broken down between the parties, was admissible, to show the relations between them, to aid in determining whether those relations amounted to the crime alleged; that women were presumed to be chaste, and, when chaste, were presumed not to surrender themselves, but that, when it was found that a woman had lost her chastity, the measure of evidence became lessened; that it was urged for the State that from the evidence the jury might find that the respondent was the father of the youngest child, and that, from the course of nature, it was begotten about December 1, 1875, but that it was not for the court to say how much weight should be given to any piece of evidence; that there was no doubt that, from " proof that from day to day, from month to month, a man was living with a woman as his wife, that he lodged with her, that they had children born regularly and continuously, and in the ordinary way"; the jury would be justified in finding that there was adulterous connection between them; that it was also urged on the part of the State, that it was satisfactorily proved that the respondent and the girl had slept together within three years; that it was proved by the evidence of his declarations, if credible, that they had continuously occupied the same bed, and that, from the respondent's conduct at the birth of the child, in taking care of it after it was born, when the nurse put it into his arms, and from his continuous support of the children, the jury must be satisfied that the respondent and the girl sustained the relations of husband and wife, and that the children were begotten by the respondent, but that it was all a matter for the jury; that if they found that the evidence satisfied them beyond any reasonable doubt that the charge was true, it would be their duty to say so; but that if they had any doubt that the respondent had

had sexual connection with the girl within three years from the finding of the indictment, the doubt should be solved in favor of the respondent.

To the refusal to charge as requested, and to the charge given, so far as it varied from the requests, the respondent excepted.

*S. C. Shurtleff* and *J. A. Wing*, for the respondent.

There was no legal proof of the respondent's marriage. The copy of the record is insufficient. It contains no minute of the time when the record was made, and shows no separate columns, as required by the statute. It is not a copy, so far as appears, of the clerk's record of a copy of the minister's record, as it should be. Gen. Sts. c. 17, ss. 1, 3; Sts. 1863, No. 26. The certificate of the copy produced is defective. It does not certify of what the copy is a true copy. There is nothing to show the town of which Page was clerk, or in what town the record was made. The girl having been unmarried, there was no proof that adultery had been committed. The *corpus delicti* not having been proved, the testimony of the St. Cyrs and Ida Osgood was not admissible. WILLIAMS, C. J., in *State* v. *Way*, 6 Vt. 311. And see PECK, J., in *State* v. *Temple*, 38 Vt. 37; *Commonwealth* v. *Merriam*, 14 Pick. 518; *State* v. *Bates*, 10 Conn. 372.

The court should have charged in accordance with the second and sixth requests, and the charge was otherwise erroneous.

*Frank Plumley*, State's attorney, for the State.

The copy of record was substantially correct, and was properly admitted.

The evidence of acts of adultery between the same parties prior to the act alleged, was properly admitted. *State* v. *Bridgman*, 49 Vt. 202; *Thayer* v. *Thayer*, 101 Mass. 111; *Lawson* v. *State* 20 Ala. 65; 1 Whart. Crim. Law, ss. 635, 649; 3 Ib. s. 2653. The order of the admission of evidence is in the discretion of the court. 2 Greenl. Ev. s. 47; *Duke of Norfolk* v. *Germaine*, 12 Howell St. Tr. 929, 945; *Lawson* v. *State, supra.*

The charge was careful and explicit as to the necessity for proof of the commission of the act alleged within the time alleged,

and as to the effect to be given to the proof of the previous acts of adultery, and the jury found that the respondent committed the act as alleged. It was established not by direct, but by circumstantial evidence, which is admissible to prove both the crime and the criminal. *State* v. *Davidson*, 30 Vt. 377, and cases *passim*.

The opinion of the court was delivered by ,

BARRETT, J. The copy of record used in evidence sets forth the marriage to have been solemnized in Plainfield, in the County of Washington and State of Vermont. The statute requires that such marriage should become matter of record in the clerk's office of said town. The copy purports to be of such a record as the statute requires; and the certificate authenticating it purports to be the certificate of a town clerk, without naming that he is town clerk of Plainfield. The maxim as to presumption in such cases is applicable and effectual. It is inconceivable that the minister should have sent his copy of record to the town clerk's office of any other town, or that the clerk of any other town would have recorded it, if sent to him. The rule governing the legitimacy of documentary evidence is the same in criminal as in civil cases. The difference of the rule of evidence as between the two classes of cases is in respect to the measure and weight of the evidence addressed to the jury upon the matters on which they are to pass. On the question whether a document is admissible as evidence to go to the jury, the court determines it by the same rules as when the question is made in civil cases.

The copy of the town clerk's record is made evidence by the statute. That alone was adduced in this case. The question was, whether that was admissible; not whether the minister's record, or a copy of it, was admissible. The town clerk's copy is of just such a record as the minister is required by statute to make, signed by the officiating minister. The town clerk's record contains all that is necessary under the provisions of the statute, to make it authentic and valid as evidence of the fact of marriage. The statute requiring the person solemnizing the marriage to return to the town clerk annually a copy of his record, makes no requirement as to the authentication of the copy so sent. The

town clerk records what the person sends him as such copy, bearing the name, with the official designation, of such person. If that record of the town clerk shows that the document recorded by him is such as the statute requires it to be, that record of the town clerk becomes the " presumptive evidence " named by the statute, and is effectual, unless invalidated by extrinsic evidence, or by some proper proceeding for that purpose. There was no error in this respect.

If the evidence to which objection was made was admissible as tending to prove any matter material to be proved by the prosecution, we see no ground for legitimate criticism of the charge of the court. The issue and the rule of evidence were presented to the jury sharply, and their attention was called to the evidence that had been adduced as bearing on the issue under that rule of evidence ; and the whole was left for the consideration and finding of the jury, without any direction or control of the court in that respect. There is occasion to commend, rather than to censoriously criticise, the presentation of the case for the consideration of the jury.

It is claimed that evidence tending to show instances of intercourse by the respondent with his step daughter four or five years before the finding of the indictment, was not admissible, unless the *corpus delicti* be first proved. This expression, *corpus delicti*, figures largely in criminal trials from an early day, and yet, its precise scope, force, and application have not been, and cannot be, embodied in a proposition or rule applicable to all cases. The *idea* indicated by it is not obscure. Upon a charge of murder, the idea and the rule is that a conviction should not occur, unless it was proved that the subject of the alleged murder had lost his life. To put it short, that a person should not be convicted of having killed a person, until it was proved that that person was in fact dead. When that is established, the *corpus delicti* is made out—that is, the subject-matter of the alleged crime, namely, a person dead. I am not now speaking as to any character or amount of evidence required to establish that fact. So in relation to arson, larceny, or any other like crime, a burnt building, property gone from its owner, must be proved, before a person

can be convicted of having committed the crime of arson, and the like. These facts being established, any evidence that tends to show that death, the burning, the loss of property, were the criminal act of the party charged, would be admissible. Often the evidence that tends to show the *corpus delicti*, as above manifested, tends also to show that it was effected by criminal means, and by the party charged. Such evidence would be admissible, notwithstanding, of itself, it would not be sufficient to establish the *corpus delicti*. If other evidence in the case, when supplemented by that, would show the *corpus delicti*; and the criminal act of the respondent in causing it, the utmost requirement of the law in this respect would be answered. In such case the order of introducing the evidence would not necessarily be the subject of error in law. Often it is matter of preference with counsel, and discretion with the court. When all in, then its legal application and force, as bearing on the subject of *corpus delicti*, may be challenged and tested, as well as on other elements of the crime charged against the respondent. In this case, what is the *corpus delicti*, in any intelligible sense? The crime consists in the fact of the alleged intercourse by the respondent with the girl. She was unmarried. Intercourse of a man with her must be proved, whether he be the respondent, or some one else. Unless that should be proved, the fact of crime could not be imputed. She had had three children. That demonstrated there existed *corpus delicti* on her part and on the part of some man. There was no question in that respect. The next step is, was the respondent that man? If so, then not only the *corpus* but the *animus delicti* would be made out, and the crime proved upon the respondent. Any evidence tending to show that the respondent committed the act charged in the indictment would be legitimate, however that evidence might stand related to the *corpus delicti* as distinguished from other elements of the crime.

The evidence as to acts and instances of intercourse prior to the time limited by the statute, was admissible in connection with the other evidence that was not objected to, as tending to show that he was the guilty party to the acts of intercourse which were admitted to have occurred with the girl within the time covered

by the indictment. This is established by the case *State* v. *Bridgman*, 49 Vt. 202, and in *Thayer* v. *Davis*, 38 Vt. 163. That evidence was not needed in this case to show that acts of intercourse by some man with the girl had taken place within the time limited by the statute, which would constitute the crime, if done by a married man. Such acts were demonstrated by other means. It was adduced only as tending to show that the respondent had committed the guilty act, and was properly admitted.

Exceptions overruled; judgment on the verdict; and sentence, five years in State Prison.