# STATE v. IDA BRINK AND GEORGE GIBBS.

## JANUARY TERM, 1896.

*Indictment for adultery. Marriage certificate. Description of persons. By whom attested. Corpus delicti shown by circumstantial evidence.*

1. The respondent was indicted for adultery as "Ida Brink, wife of S. Brink" A marriage certificate was offered showing a marriage between Ida Brink and C. W. Brink. *Held*, admissible, it being left to the jury to say whether the persons described in the indictment and certificate were identical.

2. A marriage certificate must be attested by the official signature of the person performing the ceremony.

3. In prosecutions for the crime of adultery the *corpus delicti* may be proved by circumstantial evidence.

4. That the respondents lived together as husband and wife; that they went to the house of a stranger, introduced each other as husband and wife, and occupied together for the night a room with but one bed in it, is evidence tending to show sexual intercourse.

Indictment for adultery. Plea, not guilty. Trial by jury at the September term, 1895, MUNSON, J., presiding. Verdict guilty. The respondent excepts.

*L. C. Moody* and *C. G. Austin* for the respondents.

There was no proof of the *corpus delicti*. *State* v. *Way*, 6 Vt. 311; *State* v. *Potter*, 52 Vt. 33.

*I. N. Chase*, State's Attorney, for the state.

There was no error in receiving the certificate of marriage. *State* v. *Rood*, 12 Vt 396; *State* v. *Abbey*, 29 .Vt. 60; *Mc-Quade* v. *Hatch*, 65 Vt. 482; *People* v. *Stokes*, 12 Pac. Rep. 71; *State* v. *Arnold*, 50 Vt. 731.

The *corpus delicti* might be shown by circumstantial evidence. *State* v. *Bridgman*, 49 Vt. 202; 2 Greenl. Ev., s. 44; *Baker* v. *U. S.*, 1 Pinney 641; *State* v. *Potter*, 52 Vt. 33; Rice, Crim. Ev., s. 537 and cases cited; *Pollock* v. *Pollock*, 71 N. Y. 137; *State* v. *Searle*, 56 Vt. 516; V. S. ss. 5055, 5056.

TYLER, J.   I.   It is alleged in the indictment that Geo. Gibbs of   *   *   *   and Ida Brink, wife of *S. Brink* of   *   *   *   did commit the crime of adultery. The transcript of the record of the marriage certificate, which was admitted in evidence without objection, shows the marriage of Ida Culver to *Consider W. Brink* by E. H. Bartlett, a minister of the gospel.   It is contended that there was no evidence tending to show that respondent Ida was the person named in the certificate, and consequently that there was no proof of her marriage.   Assuming that she was the same person, her husband is incorrectly named either in the indictment or in the certificate.   Evidence tending to ·identify S. Brink and Consider W. Brink as the same person was admissible. In *People* v. *Stokes*, 12 Pac. R. 71, Cal., the certificate was that John Stokes and *Rebecca* Gibson were married to each other.   A witness was permitted to testify that he was present when a marriage ceremony was performed between the respondent and *Rachael* Gibson; *held*, that this testimony was admissible as tending to identify the parties named in the certificate.   In this case a witness testified that he had been acquainted with C. W. Brink twelve or fifteen years, and with his wife a little more than a year, and pointed out Mrs. Brink, the respondent, as sitting beside her husband, within the bar at the trial.   The court submitted the question of identity to the jury as a question of fact.   There was evi-

dence tending to show that the man who sat beside respondent Ida in court was her husband and that his name was C. W. Brink. It was properly left to the jury to say whether or not he was the same person called in the indictment "S. Brink." The respondents' request that the court should hold that the certificate was not evidence in support of the indictment was therefore properly denied.

II. The court *pro forma* admitted the copy of the certificate which was offered to prove the marriage of respondent Gibbs, to which the respondents excepted. The town clerk therein certifies to the name and official title of the person who solemnized the marriage, but, as it lacks the attestation and official signature of that person, it is fatally defective and it was error to admit it. *State* v. *Colby*, 51 Vt. 291.

III. The state's evidence tended to show that the respondents were at Abercorn, P. Q., in the latter part of May and fore part of June, 1894, and lived in the house of one Ruiter for about two weeks; that they were known as and called man and wife while in that locality; that there was no other evidence tending to show adultery while there. It further tended to show that on the night of June 5, 1894, they went to the house of Louis St. Germain in the town of Richford, in this state, and engaged board for the respondent Ida Brink that she might work in the overall factory at that place; that they were supposed to be man and wife when application was made for board, and were called Mr. and Mrs. Gibbs by respondent Brink, and were together introduced to Mr. St. Germain, by his wife, as Mr. and Mrs. Gibbs; that they spent the evening together at that house; that they spoke about retiring and were shown to and occupied the same room in that house that night; that there was but one bed in the room; that the bed had the appearance the next morning of having been occupied by two persons; that they took breakfast with the family, after which, respondent Gibbs left and did not return; that respondent Brink retained the room and

boarded at the same place about two weeks and worked at the factory, when she left town and neither of them returned afterwards; that while at Richford respondent Brink represented herself as the wife of respondent Gibbs.

It was held in *State* v. *Way*, 6 Vt. 311, on trial for adultery, that proof that the parties were found in bed together was not sufficient to convict of adultery; that in prosecutions of this crime, as in all others, the *corpus delicti* must be proved; that a person should not be presumed guilty of a crime from mere opportunity of committing it; that if this were permitted there would be great danger that the inference would be made in some cases without adequate proof.

In most crimes the *corpus delicti* may be established independently of the parties accused. In larceny, burglary, arson and murder, the commission of the crime may be fully established and yet the evidence point to no particular person as the perpetrator. But in adultery the *corpus* of the crime is the fact of sexual intercourse, and the crime cannot be proved independently of the persons on trial.

It is laid down in the books as an elementary rule that the proof of this crime is the same, whether the issue arises in an indictment, a libel for divorce, or an action on the case. This of course relates to the kind and not to the measure of evidence.

In 2 Greenl. Ev. s. 40, the rule is stated, quoting from Lord Stowell in 2 Hagg. Con. 2, 3:

"That it is not necessary to prove the direct fact of adultery, because if it were otherwise there is not one case in a hundred in which that proof would be attainable. It is very rarely, indeed, that the parties are surprised in the direct act of adultery. In every case, almost, the fact is inferred from circumstances that lead to it by fair inference as a necessary conclusion, and unless this were so held, no protection whatever could be given to marital rights. What are the circumstances which lead to such a conclusion cannot be laid down universally, though many of them, of a more obvious nature and of more frequent occurrence, are to

be found in ancient books.  At the same time, it is impossible to indicate them universally, because they may be infinitely diversified by the situation and character of the parties, by the state of general manners, and by many other incidental circumstances, apparently slight and delicate in themselves, but which may have most important bearings in decisions upon the particular case.  The only general rule that can be laid down upon the subject is, that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion."

In section 40 the writer says:

"The rule has been elsewhere more briefly stated to require, that there be such *proximate circumstances* proved, as by former decisions, or in their own nature and tendency, satisfy the legal conviction of the court that the crime has been committed,"

And cites *Pollock* v. *Pollock*, 71 N. Y., as holding that *general cohabitation* as man and wife excludes the necessity of proof of particular facts.  It is also laid down in the same section and sustained by authorities cited in the notes, that where an adulterous disposition of the parties has been established, the crime may be inferred from their being found together in a bed chamber under circumstances authorizing such inference.  This rule is recognized in Bish. Mar. & Div. 2d ed., s. 422.

In 1 Am. & Eng. Ency., 2d ed., p. 752, the law is stated as follows:

"From the nature of the offence of adultery it is not, save in exceptional cases, susceptible of direct and positive proof; it can more often only be established by evidence more or less circumstantial in its nature.

"Hence, it is considered that direct proof of the carnal act is not necessary; it is sufficient to show circumstances from which the jury may reasonably infer the guilt of the parties. So it has been held that the act of adultery may be proved by evidence that a man and woman occupied the same bed and room, undressed, in the night time, or even that they occupied a room with a bed in it most of the night."

In the notes is cited *State* v. *Green*, Kirby 87, Conn.,

where the facts were that persons suspecting that Green was
with a certain woman, went to the house, looked in and saw
Green in bed with the woman, and that .she turned from
Green while in bed undressed. It was argued for the respon-
dent that this was not proof of the crime of adultery, but that
the case fell under another statute, which made it a crime for
"any man to be found in bed with another man's wife." It
was held by the whole court that the jury were the judges of
the weight of evidence on the whole circumstances of the
case, and that though the prisoner, by the same evidence,
might have been proceeded against and convicted under the
other statute, for a lower offence, yet it could not from thence
be inferred that the evidence was not sufficient to convict him
of adultery.

In *Com.* v. *Bowers and another*, 121 Mass. 45, the re-
spondents were found in a bed-room, at a hotel, about twelve
o'clock at night, the man in bed, the woman not in bed, with
her clothes on except her corset and shoes; *held*, that the
circumstances, unexplained, would warrant the jury in finding
them guilty of adultery.

Colt, J., in *Thayer* v. *Thayer*, 101 Mass. 111, said :

"The evidence by which the act of adultery is proved is
seldom direct. The natural secrecy of the act makes it ordi-
narily impossible to prove it, except by circumstantial evi-
dence. &ast; &ast; &ast; But when an adulterous disposi-
tion is shown to exist between the parties at the time of the
alleged act, then mere opportunity, with comparatively
slight circumstances showing guilt, will be sufficient to
justify the inference that criminal intercourse has actually
taken place. The intent and disposition of the parties
towards each other must give character to their relations, and
can only be ascertained, as all moral qualities are, from the
acts and declarations of the parties. It is true that the fact
to be proved is the existence of a criminal disposition at the
time of the act charged; but the indications by which it is
proved may extend, and ordinarily do extend, over a period
of time both anterior and subsequent to it. The rules which
govern human conduct, and which are known to common

observation and experience, are to be applied in these cases, as in all other investigations of fact."

He further said that when an adulterous disposition is once shown to exist between two persons, a strong inference arises that it will have continuance; that the rule is, that a condition once proved to exist is presumed to have continuance till the contrary be shown.

It is in this view that the rule is generally stated, that an adulterous disposition being proved to exist between the parties, and an opportunity being shown for them to commit the crime, the fact may be inferred, if the circumstances are such as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt. See *State* v. *Brecht*, 41 Minn. 50; *State* v. *Ean*, Iowa, 58 N. W. 898; *People* v. *Girdler*, 65 Mich. 68, cited in 1 Am. and Eng. Ency. 753.

It was held in *Com.* v. *Clifford*, 145 Mass. 97, that,

"If a married man is found with a woman not his wife in a room with a bed in it, and stays through the night with her there it is sufficient to warrant a finding of adultery against him."

A familiar instance given in the books of the competency of circumstantial evidence to prove this crime is that of a married man visiting a brothel and remaining for some time alone in a room with a common prostitute; another, that of a woman going to such a place with a man.  2 Greenl. Ev., s. 43.  The birth of children to a married woman whose husband is living and proof of his non-intercourse, is always proof of the *corpus delicti;* so it is not necessary that parties be detected in the act.

In *State* v. *Hart*, Iowa, 64 N. W. 278, the charge of the court was:

" You are instructed, in cases of this kind, that it is not necessary to prove the direct fact of adultery by the evidence of witnesses who can testify from personal knowledge of the actual fact of adulterous intercourse in every case.  Almost always the fact of adultery, if established at all, must be by circumstantial evidence, by the proof of circumstances that

lead the mind, honestly searching for the truth, to the conclusion necessarily that the act of adulterous intercourse had actually taken place. The circumstances, however, offered by the state to prove the fact of adultery, must be such that, when fairly and honestly considered, exclude all reasonable doubt, and can be explained upon no reasonable hypothesis but that of the defendant's guilt."

The charge was sustained as stating the law correctly.

The cases and text books above cited clearly sanction the admission of circumstantial evidence as tending to establish the *corpus* of the crime, and not merely in corroboration of direct and positive testimony. This was held in *State* v. *Bridgman*, 49 Vt. 202. A quotation from the syllabus of that case is as follows:

"Evidence of other acts of improper familiarity and adultery between the parties to the alleged offence, continuing from before until after the offence charged and after indictment found, is admissible, although it proves other and distinct offences, to show the true relation of the parties to each other,—to show that the restraints and safeguards of common deportment and conventionality, and of natural modesty that is presumed to exist, have been broken through and displaced by the adulterous disposition and the habits of adulterous intercourse."

In *State* v. *Poteet*, 8 Ire. 23, a witness testified that he went early one morning to the house of one of the defendants, and on knocking, was, after some delay admitted by the female defendant, who came to the door with her frock on but unfastened; that the male defendant was in the only bed in the room; that the woman's shoes were near the head of the bed, and that the bed seemed to be very much tumbled; *held* that the court did right in refusing the instruction prayed for, that there was *no* evidence from which the jury might infer the criminality of the defendants; that in the absence of express and positive testimony the law authorized the conviction of the defendants on presumptive evidence, if it was so strong as to leave no reasonable doubt in the minds of the jury that they were guilty. This doctrine was reaffirmed in

*State* v. *Eliason*, 91 N. C. 564, the court saying that it was sufficient to show facts and circumstances that would satisfy the jury of the existence of such intercourse.

In *State* v. *Richardson*, 34 Tex. 142, the facts were that a married man and a colored woman, not his wife, lived together for a series of months in the same room, wherein was but one bed, and with no attendant but a small child; *held* to be strong evidence of cohabitation in adultery, and sufficient to warrant a verdict of conviction.

In *Pollock* v. *Pollock*, *supra*, Folger, J., said:

" And though it is an act of darkness and great secrecy, and not often provable by direct means, and the evidence must in most cases be circumstantial, yet the circumstances must be sufficient to satisfy the mind that the adulterous intercourse has taken place. Though presumptive evidence alone is sufficient to establish the fact, the circumstances must lead to it, not only by fair inference, but as a necessary conclusion."

In *State* v. *Potter*, 52 Vt. 33, the exceptions state that there was no direct proof of the commission of the act alleged within three years before the finding of the indictment, but the state's evidence, " tending to raise a presumption of the commission of the act was," that the respondent and his unmarried step-daughter had for a number of years, and within the three years, occupied the same sleeping room; that the girl had borne three children, the respondent procuring and paying for the services of doctor and nurse; that he was present when the children were born; that he called them his and supported them, and said he could have sexual intercourse with the girl. This was submitted by the court to the jury, not as direct, but as circumstantial evidence. Evidence was also admitted tending to show that the parties had intercourse with each other five, six and seven years before. This was objected to on the ground that the *corpus delicti* had not been proved. This court held that evidence admissible; also, that the birth of children to the alleged *particeps criminis* having been proved, "any evidence tending to

show that the respondent commited the act charged in the indictment would be legitimate, however that evidence might stand related to the *corpus delicti* as distinguished from other elements of the crime." In the opinion no reference is made to *State* v. *Way*, and the former case cannot be construed as supporting the latter, but rather as elucidating the doctrine here laid down.

As before observed; the law does not require a different kind of evidence in criminal prosecutions for adultery from that required in civil suits. The difference is only in the conviction which the evidence carries to the minds of the triers of the fact. The court, in *State* v. *Potter*, in respect to the admission of a marriage certificate, said :

" The rule governing the legitimacy of documentary evidence is the same in criminal as in civil cases. The difference in the rules of evidence as between the two classes of cases is in respect to the measure and weight of the evidence addressed to the jury upon the matters on which they are to pass."

It has not been the practice to apply the rule in *State* v. *Way* in the trial of divorce cases for the cause of adultery. In an action on the case for *crim. con.* it would not be error if the court submitted to the jury evidence like that in the present case as tending to prove the fact in issue. It would therefore be illogical to hold it error in this case, that the court submitted the evidence to the jury with proper instructions, as having a tendency to prove the crime alleged, though not conclusive of it.

If the doctrine of *State* v. *Way* is adhered to, that the fact of a respondent's illicit intercourse must be first proved, then the only office of circumstantial evidence is to corroborate the direct evidence,—perhaps identify the *particeps criminis*,—and a conviction can rarely be had on account of the secret nature of the crime. We think that proof of the *corpus* should not be limited to *direct* evidence, as detection in the act, nor to what Greenleaf (Vol. I, s. 13 a) denominates cir-

cumstantial evidence that is certain—that from which the conclusion in question necessarily follows—but that circumstantial evidence of the *uncertain* kind should be admitted— that from which the conclusion is *probable* only, and is arrived at by process of reasoning. The birth of an illegitimate child to a married woman would be a circumstance of the *certain* kind that the woman had committed adultery. But where the evidence is that the parties had previously introduced themselves to others and passed themselves off as man and wife and cohabited as such for two weeks ; that they came to a boarding house in this state, introducing and passing themselves off in the same manner for the evident purpose of being allowed to occupy a room together that night, spending the evening in conversation with the family, going to a room at their request, occupying the same room and the same bed that night—such evidence, though *uncertain*, renders the fact of adultery so probable that it should be submitted to the jury to decide whether they are guilty or not, under the general rule in criminal cases, that to warrant a conviction the jury should be satisfied of their guilt beyond any reasonable doubt.

*For the reasons stated in the second point the exceptions are sustained; judgment reversed, verdict set aside and cause remanded.*

Taft and Thompson. JJ., dissent.