THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ADOLF GRAUER, Appellant.

*Rape — corroboration of the female — prior criminal acts between the same parties — statements of the complainant made out of the presence of the defendant.*

The provisions of section 283 of the Penal Code, which enact that no conviction can be had for rape upon the testimony of the female defiled, unsupported by other evidence, are satisfied where the additional evidence is merely circumstantial. It need not be in and of itself convincing or conclusive, but it must be corroborative of the evidence of the female.

What corroborative evidence is sufficient in this respect, in all cases where the issue of sexual intercourse is involved, whether the act was committed by force upon the part of the male, or with the consent of both parties (including the crime of rape in the second degree under the Penal Code), considered.

Evidence of the commission of prior similar acts between the same parties is competent as tending to establish the commission of the particular act in question, or to corroborate witnesses testifying thereto.

APPEAL by the defendant, Adolf Grauer, from a judgment of the Court of General Sessions of the peace in and for the city and county of New York, rendered on the 17th day of December, 1895, convicting the defendant of the crime of rape in the second degree and sentencing him to imprisonment for a term of ten years.

*Morris A. Tyng,* for the appellant.

*John R. Fellows, District Attorney,* and *John D. Lindsay, Assistant District Attorney,* for the respondent.

WILLIAMS, J. :

This indictment contained counts for rape, first degree, rape, second degree, and abduction. At the close of the People's evidence the district attorney elected to proceed alone under the third count for rape, second degree. This count charged the defendant with the crime of having, on October 15, 1895, at the city of New York (under circumstances not amounting to rape in the first degree), perpetrated an act of sexual intercourse with one Johanna Schmidt, she being a female under the age of eighteen years, to wit, of the age of fifteen years. (Penal Code, § 278, subd. 5.) The girl was clearly but fifteen years of age at the time of the alleged act, and was not the wife of the defendant. The only remaining

element of the crime was the act referred to. The girl herself testified to this act, and the defendant, sworn as a witness, denied it.

The questions in the case arise with reference to this element of the crime. *First, it is said the girl's story was incredible in itself.* It appeared that the defendant was the stepfather of the girl, having married her mother, a widow, about six years before, and that he was thirty-six years of age at the time of the criminal act alleged; that the girl since she was two years of age had been subject to epileptic fits; that the defendant was a drinking man and did not work steadily, and that his wife, Johanna's mother, did more or less work away from home to aid in the support of the family, consisting of three children by her former husband and three by the defendant; that while her mother was away from home Johanna was left to care for the younger children, one of them being a baby; that the defendant was thus, at times, at home with Johanna and the younger children, when his wife was away.

Johanna testified that for two years prior to the criminal act alleged in the indictment, the defendant had assaulted her criminally from time to time in the absence of her mother; that she had struggled and cried out each time, but that it did no good; that she threatened to tell her mother but did not do so by reason of fear of the defendant; that on the first occasion the defendant hurt her; that her mother came to the house on this occasion and found the door locked; the defendant opened the door, and the mother inquired what was going on; he said nothing, and no information was given her by Johanna, because the defendant threatened her if she did give it. She testified to the circumstances connected with the criminal act alleged in the indictment as occurring October 15, 1895; that it occurred in the morning about eleven-thirty o'clock while her mother was out at work; that the three younger children and her sister Katy, ten years old, were at home; that the defendant told Katy to take the children and get some candy, and gave them five cents; that Katy took the two elder children and went out, leaving the baby home; that the defendant then locked the door and committed the act charged; that she cried out, but that it did no good; that she never told any one what had previously happened during the two years, until the day of and after the act alleged in the indict-

ment, and that then she told her mother when she came home, and in the presence of the defendant. She testified that she (Johanna) was never intimate with any other man than defendant, and that she could not read or write. *We cannot say* her story was incredible, in view of the circumstances developed by the evidence in the case. When the alleged criminality began, she was a girl only thirteen years of age, and had been an epileptic since she was two years of age. The defendant was her stepfather. She claimed that she resisted and cried out every time the defendant assaulted her, and yet she did not tell her mother about it during the two years. It is evident to us, as it was to the district attorney at the trial, that the resistance was not such as to constitute the greater crime. Even if the act was assented to by the girl, that would not relieve the defendant from the criminality of his conduct, because the girl was under the age of consent. But her assent was undoubtedly passive. In view of her ignorance and physical infirmity, it lacked the elements of consciousness and knowledge.

The other evidence in the case is of such a nature as to leave no doubt in our minds that the story of the girl as to the fact charged in the second degree count was substantially true. The evidence was of such a nature as to corroborate her story. The mother of the girl and wife of the defendant testified that about two years before the trial she found the door locked at one time ; the defendant opened the door, seemed taken aback and frightened to see her ; she asked where the girl was ; he said in the bedroom ; she found the girl there acting suspiciously, and when she asked her what she had been doing, the defendant made an inaccurate statement tending to divert the mother's attention from the truth. She asked him if he had been doing anything to the child, and he said no, what did she take him for, he wouldn't do such a thing — and she believed him. She further testified that the girl first told her about the criminal act October 26, 1895, about eleven o'clock in the morning, and that she told the defendant about eight in the evening, and then made complaint to the police. She produced a letter written her by the defendant, wherein he said : "I have fooled with her, but have never harmed her. If a doctor examined her it would be found that she is not wronged." She further testified on cross-examination that the girl told her seven or eight months before the

trial that she didn't want to go out with the defendant any more; that he held her in the cellar of a house where he was working, and took her through dark instead of light streets, and tried to lift up her clothes by a board fence. She also testified on cross-examination that he acted very indecent with this girl in the presence of the other children and used improper language, and that she never saw this girl with other men or boys.

The police officer who arrested the defendant testified that when the charge was made in the police station he stood still, looked at the sergeant and said nothing. And an employee of the Society for the Prevention of Cruelty to Children testified that, when arraigned in the Harlem Police Court, and the charge was read to him, the defendant said : " I may have fooled with her, but I never did her any harm." The girl's sister Katy testified that on an occasion, which was apparently October 15, 1895, in the morning, the defendant told her to take the two children and get them some candy, and gave her five cents; that she went with the children, bought the candy, was not long gone, and that when she came back she found the door locked ; that the defendant came and opened it, and that when she went for the candy she left him and the girl Johanna and the baby there.

The defendant disputed all the evidence given by these witnesses as to anything occurring when he was present. He conceded the writing of the letter, and said he meant by " fooling with " the girl, only having fun, not having intercourse with her, not putting his hands upon her improperly, but that he had wrestled with her and thrown her on the floor in the presence of her mother.

The court submitted the case to the jury in a very fair and impartial way, and the jury believed the story told by the girl. From a very careful reading of the evidence, we also are convinced, we have no reasonable doubt, but that the defendant committed the criminal act charged against him. The charge was a serious one, and the punishment inflicted was severe, though none too severe for the offense committed. The gravity of the matter has led us to very carefully examine the evidence so as to be satisfied that no injustice has been done in arriving at the conclusion of guilt under the evidence in the case. We are satisfied the evidence was such as to warrant a conviction and to fully support the verdict.

There are legal questions arising in the case, however, which need consideration. It is said that there was no evidence to support that of the girl Johanna, as required by section 283 of the Penal Code, which provides that "no conviction can be had for * * * rape or defilement upon the testimony of the female * * * defiled, unsupported by other evidence." The evidence under this section to support that of the female need not be direct; it may be circumstantial. It need not be in and of itself convincing or conclusive, but it must be corroborative of the female's evidence. Such evidence, and of sufficient character to satisfy the provision of this statute, was given in this case. The testimony of the doctor, of Katy, the girl's sister, and of the mother, the defendant's wife, the appearance of the defendant at the station house, and his statement in the Police Court when arraigned, and in the letter concededly written by himself to his wife after his arrest, and his own evidence in attempted explanation of this letter, and as to his fooling with and wrestling with the girl, furnish evidence sufficient to satisfy the provisions of the statute, though alone insufficient to establish the commission of the criminal act.

It is said that the evidence given in the case of the various criminal acts during the two years prior to the act charged in the indictment was incompetent and improper. The defendant when this evidence was given was being tried for rape in the first degree, as well as in the second degree. The election to proceed for the second degree alone, was not made until the close of the evidence on the part of the People. There was no motion made after such election to strike out this evidence. This species of evidence, however, manifestly had a strong effect upon the jury, the evidence of the girl on this subject having been more or less corroborated by the other evidence in the case; and if this evidence was improperly considered by the jury, and the conviction resulted in whole or in part therefrom, the conviction should not be permitted to stand, even though the question was not properly raised by objection and exception on the trial.

The evidence was apparently competent and proper when it was offered and objected to, because the defendant was then being tried for rape in the first degree. (*People* v. *O'Sullivan,* 104 N. Y. 481.) In that case the learned judge writing the opinion said: "Upon the

trial, after the complainant had testified to the rape, she was permitted, against the defendant's objection, to testify that four days previously he made an attempt to ravish her; that she resisted him and that he failed. For the reception of this evidence, the court at General Term, as appears by the opinion there pronounced and concurred in by a majority of the judges, reversed the conviction, holding that it was incompetent upon the trial of the defendant for the crime alleged to prove any other crime committed or attempted by him. We do not agree with the learned General Term in the view thus taken of this evidence. It is quite true that it is a general rule of law that, upon the trial of a prisoner for one offense, it is improper to prove that he has been guilty of other offenses; as where a prisoner is put upon trial for larceny, or burglary or murder, it is incompetent to prove that he has been guilty of other larcenies or burglaries, or murders or other crimes. In this case it would have been incompetent to prove that the defendant had committed or attempted to commit a rape upon any other woman. But where a prisoner is tried for a particular crime, it is always competent to show, upon the question of his guilt, that he had made an attempt at some prior time, not too distant, to commit the same offense. Upon the trial of a prisoner for murder, it is competent to show that he had made previous threats or attempts to kill his victim. (*People* v. *Jones,* 99 N. Y. 667.) Upon the same principle it must always be competent to show that one charged with rape had previously declared his intention to commit the offense, or had previously made an unsuccessful attempt to do so. In this case, if witnesses, other than the complainant, could have been called, who witnessed the unsuccessful attempt of the defendant to ravish the complainant four days before the crime was in fact accomplished, no one would have questioned the competency of their evidence. And the evidence is not rendered incompetent because it comes from the complainant herself. It is not as valuable or trustworthy or important as if it had come from other witnesses. It probably did not have a very important bearing with the jury, because, unless they believed her evidence as to the principal offense, they would not believe her evidence as to the prior attempt. But it may have had some tendency to corroborate her story as to the principal offense, and thus may have had some weight with the jury.

But whether it was important or not, there is no rule which condemns it, and there is abundant authority to justify its reception."

That was a case of rape in the first degree, but the doctrine is not confined to cases of rape in the first degree as at present constituted. It is clearly applicable to all cases where the issue of sexual intercourse is involved, whether the act was committed by force on the part of the male, or with the consent of both parties. Attempts to commit acts of sexual intercourse by the male upon the same woman, acts voluntarily committed by both parties at times antecedent to the commission of the act sought to be established, are competent as circumstances tending to establish the act alleged, or in corroboration of witnesses testifying to such alleged act. ·

In Wharton's Criminal Evidence (§ 35) it is said : "In prosecutions for adultery, or for illicit intercourse of any class, evidence is admissible of sexual acts between the same parties prior to, or, when indicating continuousness of illicit relations, even subsequent to, the act specifically under trial. Prior sexual attempts on the same woman are admissible, under the same limitations, on a trial for rape."

In *Commonwealth* v. *Nichols* (114 Mass. 285) the defendant was tried upon an indictment for adultery, and it was held that acts of adultery between the defendant and the same woman committed about the time of the adultery for which he was indicted, though committed in another place, were competent to be proved in support of the indictment. The same doctrine was held in *State* v. *Williams* (76 Maine, 480), and in *State* v. *Withan* (72 id. 531), in each of which the defendant was tried upon an indictment for adultery, and the court said in the latter case : "Courts and text writers are rapidly falling in with the view that acts prior and also subsequent to the act charged in the indictment, when indicating a continuousness of illicit intercourse, are admissible in evidence, as showing the relation and mutual disposition of the parties.   *   *   *   We think this doctrine is most in accordance with the logic of the law and with the authorities."

In *The State* v. *Markins et al.* (95 Ind. 464) the defendants were tried upon an indictment for incest, and it was held competent to prove prior acts of indecent familiarity and sexual intercourse between the parties for the purpose of corroborating the other evidence of incestuous intercourse, the court saying : "Previous acts

of lascivious familiarity would tend strongly to show the commission of the specific offense charged by the State, for it is impossible to doubt that evidence of such a character tends to make it probable that the parties did commit the specific offense charged. Such evidence goes in proof of the main offense, because it is evidence of the probability of its perpetration. * * * It is a rule of elementary logic, as well as of rudimentary law, that evidence which tends to establish facts rendering it antecedently probable that a given event will occur, is of material relevancy and strong probative force. * * * The probability that a woman will yield to the embraces of a man to whom she has before submitted * * * is much stronger than if it appear that no intimacy had existed between the parties. * * * The disposition of the parties involved in the crime becomes an element of importance. * * * The general rule undoubtedly is, that one crime cannot be proved in order to establish another independent crime ; but this rule does not apply to cases where the chief element of the offense consists in illicit intercourse between the sexes." (See, also, *The People* v. *Jenness*, 5 Mich. 305 ; *Thayer* v. *Thayer*, 101 Mass. 111 ; *State* v. *Bridgman*, 49 Vt. 202 ; *State* v. *Pippin*, 88 N. C. 646 ; *State* v. *Kemp*, 87 id. 538.)

Under our present statute, rape in the second degree involves not only the adulterous disposition of the defendant, but of the female as well — her actual though not legal consent to the sexual intercourse. The disposition of both parties is, therefore, involved, as it is in an indictment for adultery and incest, and the evidence is clearly admissible upon the theory of showing the adulterous disposition of both parties before and at the time of the act of sexual intercourse charged in the indictment, as a circumstance tending to establish the commission of the act alleged, and in corroboration of the other evidence in the case upon that issue. Upon both reason and authority this evidence, as to previous sexual intercourse, was properly received and retained in this case and submitted to and considered by the jury.

It is also said that the court improperly admitted and retained in the case, upon motion to strike out, evidence given by the People as to the complaint of the girl to her mother, in the absence of the defendant, of criminal acts between her and the defendant. The

girl testified that she told her mother about what had happened on the 15th day of October, 1895, the day the criminal act charged in the indictment was committed, and that the defendant was present at the time this interview was had. Her evidence was, therefore, proper, and was not covered by the defendant's objection to the evidence when given, nor by his motion to strike out. The evidence of the mother was as to a complaint made to her by the girl October 26, 1895, eleven days after the last act of criminality, the one charged in the indictment. The defendant was not present at that time, and the only question is as to this piece of evidence. The mother testified, without objection : "This story about my daughter wasn't told until the 26th. The defendant was not there when she told me. It was about eleven o'clock in the morning that I had a talk with my daughter Johanna. * * * Nothing had been said to me before that which made me speak to my daughter." Then she was asked to state whether, at that time, the daughter complained to her about what her husband had done, and her answer was that the daughter *did* then *make complaint* to her of *what the defendant had done to her.* It may be doubted whether this evidence was strictly competent in the case, especially after the district attorney had elected to proceed for rape in the second degree alone. It does not, however, seem to us that the evidence could have had any prejudicial effect upon the defendant, even if it was technically improper. It is expressly provided by the Code of Criminal Procedure (§ 542) that "After hearing the appeal the court must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties."

It will be observed that the mother did not give any evidence as to what the story told by her daughter was, nor did she state what act or acts, if any, she made complaint about; and only by inference could it be said that the complaint related to criminal acts at all. She merely stated that the girl made complaint to her about what the defendant had done to her. It not only appeared in the case that the girl claimed that the defendant had committed criminal acts with her during a period of two years, but the mother testified, on her cross-examination by the defendant's counsel, that the girl had told her, seven or eight months before the trial, that the defendant had held her in a dark cellar where he worked, and had

taken her through dark streets instead of light ones, and there sought to take improper liberties with her; and, although the inference might properly be drawn that the complaint on the twenty-sixth of October referred to the more serious charge, yet the nature of the complaint was not stated by the mother, but was left indefinite and uncertain. Assuming, however, that the evidence fairly was that the girl made a complaint that the defendant had been improperly intimate with her, it certainly could not be said that the complaint testified to by the mother was solely as to the criminal act alleged to have been committed by the defendant on the 15th of October, 1895. The complaint, whatever it was, seems to have been in a way communicated to the defendant the same evening, the mother testifying that she said to the defendant: "I will go out and get two girls, and that may be enough for you to serve you when I am out at work," and that he said, "Who told you?" and she replied: "Here is the one right beside me," pointing to Johanna, and that then she took the girl to the police station, and the officer came back with her and took the defendant into custody. Such a complaint, made at such a time, under such circumstances, and communicated to the defendant and resulting in his arrest the same day, was of no particular importance and could have had no appreciable effect upon the jury in determining whether the defendant was guilty or not. It could have had no more effect, practically, than if the complaint had been first made to the officers when the girl was taken to the police station or to the Police Court, as a basis for the issuance of a warrant, especially as none of the details of the interview between the mother and the daughter at the time were given, none of the statements by the girl were shown, and no reason appeared why she made the complaint at all at that time or how she happened then to state a fact which she had failed to disclose during all the two years the criminal intercourse had been going on between her and the defendant.

We do not see that the error as to this evidence, if a technical error at all was committed, could in any way have affected the substantial rights of the defendant. The defendant was clearly proven guilty of the offense of which he was convicted. He had a fair and

FIRST DEPARTMENT, DECEMBER TERM, 1896. [Vol. 12.

impartial trial, and the judgment resulting was one that public justice requires should remain undisturbed.

The judgment appealed from should be affirmed.

VAN BRUNT, P. J., PATTERSON and O'BRIEN, JJ., concurred; BARRETT, J., concurred, with the suggestions contained in his opinion.

BARRETT, J.:

While fully concurring in the opinion of Mr. Justice WILLIAMS, I desire to add some considerations upon one branch of the case, namely, the original admission and subsequent retention of complainant's testimony as to the defendant's previous acts of criminality. In the *O'Sullivan* case the court held that the complainant could corroborate herself as to the main facts, by her own testimony as to preceding facts, either showing intent or guilty consummation. The reasoning was, that as witnesses other than the complainant could have testified to such preceding facts tending to corroborate her, so might she. We must not question the rule thus laid down. A distinction is, however, suggested between that case and the present, in the intimation there that the previous acts must not be too far distant. But whether they are too far distant depends upon the continuity of the chain of evidence. The question must always be whether the links are broken, or whether they form part of one continuous chain. Here the testimony as to past acts went to show an unvarying purpose throughout upon the defendant's part, and its competency under the general rule laid down in the *O'Sullivan* case never failed at any point. The same rule applies upon indictments for the lesser offense — that is, where force is not used. The cases cited by Mr. Justice WILLIAMS amply support his conclusion that the testimony was competent under the second degree count. In some of the cases previous acts of loose conduct were admitted, not only to support circumstantial evidence of guilt (as to which the logic of the rule is clear), but to corroborate the direct testimony of one of the guilty parties. If admissible at all for the latter purpose, then, under the *O'Sullivan* case, even the complainant is a competent witness thus to corroborate herself.

But, even if the testimony were inadmissible, the defendant was not prejudiced by its retention after the district attorney elected to proceed solely upon the second degree count. Indeed, it may fairly

be inferred that it was advisedly permitted to remain in the case. The defendant was represented by competent counsel, who moved to strike out the girl's complaint made to her mother after the act specified in the second degree count of the indictment. But he made no such motion with regard to these previous acts of criminality. Why did he make the motion in the one case and not in the other? Presumably because he deemed the testimony prejudicial to the defendant in the one case, but not in the other; because, as to the previous acts, he deemed the girl's story to be so incredible — at least in some of its aspects — as to furnish a strong argument against crediting her upon the crucial fact in issue. The learned counsel probably believed, and with reason, that the girl's improbable story as to continuous outrages and outcries for nearly two years prior to her final complaint would tend to weaken her credibility as to the particular charge finally in issue, rather than to corroborate her as to such charge. At all events, we cannot assume that, while he was vigilant in the one case he was neglectful in the other, especially as there was the good reason, which we have pointed out, for not moving to strike out the testimony in question when he failed to do so.

I have nothing to add to the other questions discussed by Mr. Justice Williams, and I unreservedly concur in his opinion that the judgment should be affirmed.

Judgment affirmed.