(25 App. Div. 583.)

PEOPLE v. FREEMAN.

(Supreme Court, Appellate Division, First Department. February Term, 1898.)

1. CRIMINAL LAW—EVIDENCE—ACTS SUBSEQUENT TO OFFENSE.
    Where it is sought to establish a prior act of illicit sexual intercourse by evidence of a subsequent act of the same nature, it should be made fairly to appear that the subsequent offense is in some way connected with the antecedent act, and that its tendency is either to establish that act or to corroborate prosecutrix with regard thereto.

2. SAME.
    In a prosecution for rape of a girl under the age of consent, evidence that defendant and prosecutrix lived together from May 9th until June 11th is not admissible to show intercourse in the preceding January, where there is no proof of intercourse, or even familiarity, in the interim.

3. SAME.
    Evidence that defendant, in a prosecution for rape of a woman under the age of consent, expressed an intention in August of going to Cuba, and tak-

ing prosecutrix with him, is not admissible in support of an illicit act of intercourse in January preceding, nor are letters which passed between the parties in May and June, after they had been living together.

4. SAME—CONSCIOUSNESS OF GUILT.
Evidence which tends to show defendant's consciousness of guilt of another offense by efforts to destroy evidence thereof, or to fabricate evidence tending to show his innocence of that offense, is inadmissible.

5. SAME—RELEVANCY OF EVIDENCE.
A letter written by defendant, which was read at an interview between defendant and the father of prosecutrix, and which had no bearing upon the interview, should not be admitted in evidence as a part of the interview.

Appeal from criminal term.

Walter K. Freeman was convicted of rape in the second degree, and he appeals.   Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

John R. Dos Passos, for appellant.
John D. Lindsay, for the People.

BARRETT, J.   1. The first question presented is whether evidence that the defendant and Sarah E. Work lived together in a flat at No. 230 West Thirty-Sixth street, in this city, from about the 9th day of May to the 11th day of June, 1894, was properly admitted in support of the charge of criminal intercourse upon the 13th day of the preceding January.   It is thus necessary to consider how far, in an indictment for such a specific offense, subsequent acts of a similar character between the same parties are admissible in support of the principal charge.   The question does not seem to have been directly passed upon in this state.   In a number of other states, where adultery is made by statute a criminal offense, it has been held that, on an indictment charging the commission of such an offense upon a given day, subsequent acts of a similar character may, within certain limits, be proved in support of the particular charge specified in the indictment.   State v. Witham, 72 Me. 531; State v. Williams, 76 Me. 480; Thayer v. Thayer, 101 Mass. 111; Com. v. Nichols, 114 Mass. 285; State v. Bridgman, 49 Vt. 202.   There is an obvious analogy between the crime of adultery and that of unlawful sexual intercourse, under our statute as to the age of consent.   The rules which govern in the one case may fairly be said to apply to the other.   The logic of the rule in adultery is fully set forth in the Thayer Case, supra.   It was there said:

"It is true that the fact to be proved is the existence of a criminal disposition at the time of the act charged, but the indications by which it is proved, may extend   *   *   *   over a period   *   *   *   anterior and subsequent to it. *   *   *   An adulterous disposition existing in two persons towards each other is commonly of gradual development.   It must have some duration, and does not suddenly subside.   When once shown to exist, a strong inference arises that it has had and will have continuance.   *   *   *   It is this character of permanency which justifies the inference of its existence at any particular point of time from facts illustrating the preceding or subsequent relations of the parties. The rule is that a condition once proved is presumed to have been produced by causes operating in the usual way, and to have continuance till the contrary be shown."

Giving full effect to this evidential principle, it is quite clear that proof of such subsequent acts can only have, with relation to the principal charge, corroborative force in aid of the original proof of the primary offense. An act of adultery on one day does not, of itself alone, furnish adequate evidence of a similar act on a preceding day, for all such relations must have a beginning. But, in connection with direct or circumstantial evidence of the antecedent act, subsequent acts of a similar character may, by reason of their close connection with or their natural relation to the antecedent act, have a certain probative value. Acts of illicit intercourse are not apt to be sporadic. They evidence an adulterous disposition in the parties involved, which, upon opportunity, usually results in repetitions of the guilty act. It is upon this principle that prior acts of adultery, or even of undue familiarity, are admitted. Subsequent acts, however, stand upon a somewhat different footing. They may be sequential, but they may also be original. If the latter, they simply prove an independent offense, and are clearly inadmissible. Care should always be taken not to prejudice the accused by lightly admitting evidence of this character. The connection between the subsequent offense and the antecedent should not be doubtful, much less vague and shadowy. The sequence should be legitimate, not forced. It should, indeed, fairly be made to appear that the subsequent offense is in some way connected with the antecedent act, and that its tendency is either to establish that act or to corroborate the prosecutrix with regard thereto. We think the cases cited support this view. Thus, in the Witham Case, it was said that the subsequent acts were admissible "when indicating a continuousness of illicit intercourse." In the Bridgman Case it was said:

"This relation of intimacy * * * does not usually take place suddenly, and the fact of its existence at any time to that extent that intercourse was actually had would be some evidence that the relation had been existing previously; and, offered with evidence of other acts so as to show the relation to be continuous through a period covering the time in question, would be quite material and convincing."

And in the Thayer Case, which in its language seems to go further than the others, it was said:

"The limit, practically, to the evidence under consideration is that it must be sufficiently significant in character and sufficiently near in point of time to have a tendency 'to lead the guarded discretion of a reasonable and just man' to a belief in the existence of this important element [permanence of the relation] in the fact to be proved."

Applying the principle of these cases to the facts of the case at bar, we think it clear that the evidence tending to show cohabitation in the Thirty-Sixth street flat was inadmissible. The cohabitation inferable from this evidence took place four months after the act for which it was sought to convict the defendant. There was no proof of intercourse, or even of familiarity, in the interim. Almost immediately after the alleged occurrence in January, the girl went to live with her mother at a flat in Twenty-Eighth street, and she remained there until the following May. The defendant was in the city part of the time, and he was traveling in the West for a short period. There

is not a suggestion of intercourse, proper or improper, during all this time. In fact, there is a complete gap in that direction, covering this whole period of four months. How, then, can evidence tending to show such illicit relations in May and June be said to corroborate proof of the intercourse in January? If the defendant and the complainant had conceived an illicit passion for each other in January, is it probable that they would have postponed its gratification until May? Nothing, so far as it appears, put any restraint upon them save those dictates of decency which had already proved inadequate. The proof which was objected to quite fails, it seems to us, to show a mutually amorous disposition between the parties four months before. Still less does it tend to show continuousness of illicit relations throughout those four months, and down to and including the later periods. Doubtless the extent to which such testimony may be admitted must, in a large measure, be determined by the trial judge in the exercise of a sound discretion. But there are bounds to his discretion. The evidence offered must at least have a legitimate tendency to show a lewd or adulterous disposition between the parties at or about the time when the offense is laid in the indictment. As was said in People v. Grauer, 12 App. Div. 464, 474, 42 N. Y. Supp. 721: "The question must always be whether the links are broken or whether they form part of one continuous chain." The subsequent act must, so to speak, cast its shadow backward. It must be a natural sequence from the prior and primary act charged, an apparent effect from the anterior cause. How is it possible to give this effect to the evidence in question? If such evidence be not too remote, it would be difficult to say when subsequent acts could ever be too remote. No limit could be applied to their admissibility, or to the time when they would cease to be sequential, and should be treated as original and primary. We are strengthened in this view by the fact that in the Thayer and Nichols Cases—which are the only ones in which the report gives definite information of the dates of the subsequent acts— the latter were closely related in point of time to that sought to be proved. In the Nichols Case the subsequent acts were committed within a week, and in the Thayer Case there was a continuance of the relations down to the time of trial.

What has been said disposes also of the question as to the competency of certain evidence that the defendant formed the purpose of going to Cuba in August, 1894, and of taking Sallie with him. This evidence was still more remote, and, as the purpose was not consummated, it was evidence merely of an intent to commit subsequent acts of an illicit character. Its tendency, too, was to corroborate, not the original act, but acts which were themselves inadmissible, namely, the acts inferable from the relations of the parties in May and June. Certain letters which passed between the defendant and the complainant late in June, 1894, after they had lived together in the flat, were equally inadmissible. They relate exclusively to the present relations of the parties, and they simply point to the fact that, some five months after the act alleged in the indictment, those present relations were apparently intimate and probably guilty.

2. This disposes of the principal points raised upon this appeal.

There are other questions, however, which, as they may again arise upon a new trial, should be briefly considered. Two indictments were found against the defendant,—the first on the 10th day of September, 1894, and the second (that now under consideration) on the 27th of the same month. Shortly after the finding of the first indictment, the defendant was arrested thereunder, and he was thereupon admitted to bail. Upon then obtaining his release, and prior to the finding of the present indictment, he went out to Montana under an assumed name, accompanied by Sarah's sister, Anna Work, to see their father, Mr. Winfield Work. His object was to induce Mr. Work to come to New York, and to testify upon the trial of the first indictment (which was the only indictment of which he was then aware) that Sarah was born in April, 1878. It seems that Mr. Work had previously telegraphed to the defendant and others that Sarah was born in April, 1878, which was an error on his part, and the defendant hoped to induce Mr. Work to adhere to that statement upon the witness stand. It is not clear whether the defendant was, at the time, aware of Mr. Work's error, but he knew that, if proof were given upon the trial of that first indictment of the fact stated in Mr. Work's telegram, he must escape, as such evidence would prove that Sarah was over 16 years of age on the 30th day of May, 1894, the date when the offense referred to in that indictment was alleged to have been committed. The fact thus sought to be proved, however, had no significance, so far as the present indictment was concerned, because, even if Sarah were born in April, 1878, she was still under 16 years of age in January, 1894. It had, however, as we have seen, a direct and crucial bearing upon the first indictment. The learned trial judge, under the defendant's objection and exception, permitted the prosecution to prove the facts which we have stated, and also to put in evidence and to read to the jury a letter which the defendant had, months before, written to Anna Work,—a letter which had no bearing whatever upon the journey or the interview, but which was full of violent abuse of Anna and of threats made against her. The prosecution was also permitted to prove, under the defendant's objection and exception, that after this interview with Mr. Work the defendant went to Memphis, in the state of Missouri, to see an undertaker named Wellington, who had an account book containing entries from which the date of Sarah's birth could probably have been ascertained; that the defendant obtained possession of this book, and took it away, and that when it was recovered it was found to be in a mutilated condition. The object of these proofs was to show the defendant's consciousness of guilt, and his attempt either to destroy the evidence thereof, or to fabricate evidence tending to show his innocence. The difficulty with this entire line of testimony is that it had no relation to the offense with which the defendant is now charged. It would have been admissible upon the trial of the first indictment, for it would have tended to show a consciousness of guilt with regard to the offense which was there charged as a separate and distinct crime, namely, the act of unlawful intercourse upon the 30th day of May, 1894. We have already seen that the evidence of the latter offense was itself inadmissible upon the trial of the present indictment. Now, if this

evidence was inadmissible, surely further evidence tending merely to corroborate such subsequent act was, a fortiori, inadmissible. It could not tend to show a consciousness of guilt as to the offense charged in the present indictment for the reason that the evidence thus sought to be obtained from Work and that attempted to be suppressed by the mutilation of Wellington's book was absolutely immaterial with regard to this offense. Whether the girl was born in April, 1878, or in April, 1879, she was certainly under 16 years of age in January, 1894. What was thus proved against the defendant, therefore, was that he was a bad man,—a man who, in an emergency, was capable of fabricating and falsifying evidence. We should add that the letter written by the defendant to Anna Work, which was read at the interview between him and Mr. Work, was inadmissible, even if the interview itself was competent. That letter had no bearing upon the subject of the interview. It did not tend in any manner to show the defendant's purpose in seeking to secure Mr. Work's testimony. Its admission cannot be sustained upon the theory that everything which happened at that interview was admissible if the fact of the interview itself was admissible. Such a doctrine would render any criminal act done, or declaration made, by the defendant, however foreign to the subject of the indictment or the purpose of the interview, admissible against him. The rule is that testimony should be confined to what is relevant to the issue, or, at least, relevant to the immediate purpose of such an interview as that in question; in other words, to what tends to show the defendant's consciousness of guilt with regard to the offense charged, or his purpose to suppress or fabricate evidence material to the real issue. The judgment of conviction should be reversed, and a new trial ordered.

Judgment reversed and new trial ordered. All concur.