The People of the State of New York, Respondent, v. John Formato, James Morello, Pasquale Lepore and Hugo Torre, Appellants.

Third Department, July 8, 1955.

*A. Jack Rappaport* for James Morello and another, appellants.

*Remo A. Allio* for John Formato and another, appellants.

*Robert E. Fischer, District Attorney* (*Louis M. Greenblott* of counsel), for respondent.

HALPERN, J. The defendants were indicted for the crime of common gambling in violation of section 970 of the Penal Law and for the crime of conspiracy under section 580 of the Penal Law, the conspiracy charged being one to keep a gambling establishment in violation of section 973 of the Penal Law.

The indictment, as amended, charged that the common gambling had occurred between September 1, 1952 and January 18, 1953. An additional indictment charged three of the defendants (Formato, Lepore and Torre) with engaging in gambling from January 19, 1953, to the date of the additional indictment, April 6, 1953.

The proof indicated that the defendants had been under surveillance by the police authorities during the fall and winter of 1952. This culminated in a raid, on January 18, 1953, at the home of one Frank Biros in the city of Binghamton. The raid disclosed that the four defendants and others had been engaged in shooting dice in Biros' home. All the participants, with a single exception, were arrested and charged with being common gamblers but the charges were pressed only against the four defendants.

The People's proof showed that during the period from October 1, 1952, to the date of the raid, January 18, 1953, the defendants had participated in dice games at the homes of various householders in the city of Binghamton, upon over thirty occasions. The householders were called as witnesses but their testimony was extracted with great difficulty; it had to be eked out by reading to them portions of their testimony before the Grand Jury, which they reluctantly verified. It appeared from this proof that the householders, six in number, had agreed to hold dice games in their respective homes upon various nights. It may fairly be inferred from the evidence that their consent had been given in response to requests by one or more of the four defendants. The evidence also tended to establish that the defendants had invited or induced other players to attend the games. However, the defendants apparently participated in the games as ordinary players on a parity with the other players; they did not appear to be in control of the games. In some instances, the householders themselves participated in the games. In most instances, the players paid $2 each to the householder for the privilege of using the premises for the game; upon occasion, the householder also furnished light refreshments. In some instances, the defendants paid the $2 fee; in others, they did not. It is clear from the evidence that no

part of the fee went to the defendants. It is also clear from the evidence that no percentage or cut of the money bet was taken out either for the householders or for anyone else. There were no special rules of the game giving the defendants any advantage or " edge " over the other players such as is given, according to the testimony, to the operator of a game played in a regular gambling house. When Biros' house was raided, loaded dice were found by the police but the defendants were not charged with cheating in violation of section 988 of the Penal Law, and there was no proof that the loaded dice had been put into the game by the defendants or had been used by them, so it must be assumed that any success which the defendants may have had in playing the game was not attributable to the use of loaded dice.

The prosecution was under the necessity of establishing, under the authorities construing section 970 of the Penal Law, that the defendants had not participated in the dice games merely as casual players but that they had participated in the games as a business or moneymaking pursuit. As the County Judge put it to the jury in his charge, in order to find the defendants guilty of the crime it had to be established that their participation in the games had " a professional or commercial aspect ". The court further charged: " By professional, we mean a person who earns all or part of his living at gambling. * * * He would be a professional as opposed to an amateur, where a person engages in a game for his living, for his livelihood, and not for entertainment ". Furthermore, the court charged that there was another " element that the prosecution must prove. Before a person can be considered a common gambler, and that is to show a continuity on the part of this person, that it was not casual or occasional, that they played, and paid for playing, and gambled to such an extent and continuously, that it could not be said that they gambled occasionally or casually, but habitually and frequently * * * [I]f the People failed to establish that any one of these defendants engaged in a game of chance with money dependent on the result, and the game had a commercial or professional aspect, and that he gambled with regularity or continuously and it could not be said that he did it occasionally or casually, if they failed to prove that, they have not proven they were common gamblers ".

The charge correctly laid down the essential elements of the crime of common gambling (*People* v. *Bright,* 203 N. Y. 73; *Watts* v. *Malatesta,* 262 N. Y. 80; *People* v. *Farone,* 308 N. Y. 305).

In addition to the evidence referred to above, there was some incidental testimony elicited by the prosecution from the householders and other participants in the games that, although they had known the defendants for a considerable length of time, they did not know of their being engaged in any business or regular occupation during the period covered by the indictment. This evidence was countered by testimony by witnesses called by the defendants that, during at least part of the period covered by the indictment, the defendant Formato worked part time as a bricklayer's assistant, the defendant Lepore worked part time at a parking lot operated by his wife, the defendant Morello worked at a grocery store operated by his sister and the defendant Torre worked as a waiter. This proof was, however, rather vague in character and was unsupported by payrolls or any other documentary evidence.

The additional indictment against three of the defendants, referred to above, charged that they played in a dice game with one Capalupo at the home of the defendant Formato on February 27, 1953, several weeks after the raid on Biros' home. The only proof of the charge was the testimony of Capalupo, who testified not only to the defendants' playing in the game but also to catching Formato using " crooked " dice. The defendants assert that Capalupo was an accomplice as a matter of law and that, in the absence of corroboration, the charge based upon his testimony should have been dismissed. The court submitted the question of whether Capalupo was an accomplice as a question of fact to the jury. In view of the holding of the *Bright* case (*supra*), this was a correct disposition of the question since it could not be said as a matter of law that Capalupo had participated in the game as a professional gambler.

The conspiracy count also was submitted to the jury in a fair charge. It was the prosecution's contention, based upon the proof reviewed above, that it had established that the defendants had conspired with each other and with the householders to use the premises of the householders for gambling in violation of section 973 of the Penal Law.

The jury found that the defendants were guilty of the crimes charged in the indictments. This appeal followed.

Upon the whole record, the question of the guilt of the defendants was a question of fact for the jury and we would not disturb the verdict, if it were not for an error of law in the admission of evidence. The People were allowed to prove, over the objection of the defendants, seven prior convictions of the defendants for offenses relating to gambling.

The dates, places and nature of the convictions were as follows:

| Defendant's Name | Date of Conviction | Nature of Offense | Place of Conviction |
|---|---|---|---|
| 1. Formato | November 21, 1950 | Establishing a gambling place | Pennsylvania |
| | November 11, 1949 (for violation on November 10, 1949) | Frequenter of gambling establishment in violation of section 12, Title IV, Article 1 of city ordinance | Binghamton |
| 2. Morello | April 21, 1951 | Playing in a gambling game in violation of section 10, Title IV, Article 1 of city ordinance | Binghamton |
| | December 29, 1951 | Violation of section 970, Penal Law | Binghamton |
| 3. Lepore | November 30, 1947 | Violation of section 970, Penal Law | Owego, Tioga County |
| | December 29, 1951 | Violation of section 970, Penal Law | Binghamton |
| 4. Torre | November 7 1951 (for crime alleged to have been committed May 11, 1949) | Violation of sections 970 and 986, Penal Law | Binghamton |

The defendants did not take the stand, so no question arose as to the admissibility of the convictions as bearing upon their credibility (Penal Law, § 2444).

The admission of the prior convictions is sought to be justified upon the ground that they tended to prove the professional

intent with which the defendants engaged in gambling from October, 1952, to January, 1953, and the " continuity of their participation in gambling ".

At the time of the admission of the proof of the convictions, the court made this statement to the jury: " this document and any other certificate of conviction on any of these defendants for gambling charges or offenses, are received not for the purpose of being any proof as to whether any of the defendants participated in any gambling games during any of the periods mentioned in the indictments under which they are now on trial, but if the jury should find that any of the defendants have participated in gambling games   *   *   *   the jury may consider prior convictions to these defendants as proof of other gambling acts as bearing on the question as to whether such defendants were gambling habitually and were common gamblers ".

The admission of the prior convictions raises two questions, first, whether proof of the prior gambling offenses was admissible and, second, whether the prior offenses could be proved by introducing evidence of convictions rather than original evidence of the commission of the offenses. Taking up the second question first, the generally prevailing rule seems to be that in any case in which the proof of a prior offense is admissible, proof of the commission of the offense may be made by proving a conviction therefor. In this respect, proof of convictions stands substantially upon the same footing as original evidence of the commission of the crimes to which the convictions relate. The convictions are formal adjudications that the defendants committed the acts specified in the certificates of conviction and, as such, they are admissible in evidence in lieu of original proof. This is the view taken in an overwhelming majority of jurisdictions and it is the view adopted by the leading writers in the field (2 Wharton on Criminal Evidence [11th ed.], § 841; 1 Wigmore on Evidence [3d ed.], § 194b, p. 660; see cases cited in 22 C. J. S., Criminal Law, § 690).

While there is no decision directly in point in New York State, it has been held in civil cases that proof of a criminal conviction of one of the parties is admissible as presumptive evidence tending to establish the facts upon which the conviction was based (*Schindler* v. *Royal Ins. Co.*, 258 N. Y. 310; *Matter of Rachtschaffen*, 278 N. Y. 336). It has been held that this rule does not apply to a mere traffic infraction but, even as to such an offense, it is held that the fact that the defendant had pleaded guilty may be introduced into evidence as a declaration

or admission against interest (*Walther* v. *News Syndicate Co.*, 276 App. Div. 169). It should be noted that the convictions involved in this case were all entered upon a plea of guilty. It may therefore be concluded that the convictions were admissible, if original evidence of the commission of the prior gambling offenses would have been admissible.

This brings us directly to the question of the admissibility of proof of the prior offenses. The elementary general rule is that proof of other criminal offenses is not admissible to establish the guilt of the defendant of the crime charged. " One may not be convicted of one crime on proof that he probably is guilty because he committed another crime " (*People* v. *Goldstein*, 295 N. Y. 61, 64). " The reasons [for the rule] are rooted in practical policy, justice and fairness. * * * 'The natural and inevitable tendency of the tribunal — whether judge or jury — is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.' (1 Wigmore on Evidence, section 194.) " (*People* v. *Richardson*, 222 N. Y. 103, 109–110.)

Any discussion of this subject must go back to *People* v. *Molineux* (168 N. Y. 264) in which the court laid down the general rule of exclusion but recognized certain exceptions. The court there held that evidence of other crimes is admissible " when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial " (p. 293). A modern formulation of the rule is to be found in the Uniform Rules of Evidence drafted by the National Conference of Commissioners on Uniform State Laws. Rule 55 reads in part as follows: " * * * evidence that a person committed a crime or civil wrong on a specified occasion is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but * * * such evidence is admissible when relevant to prove some other material fact including absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity ".

The prosecution sought to bring the proof of the prior convictions in this case within the exceptions dealing with motive

and intent. The prosecution's theory was that, since it was necessary to establish that the defendants had engaged in gambling with professional intent, the prosecution had the right to introduce proof of prior gambling offenses as bearing upon the state of mind of the defendants. With this theory we are in general agreement but, in order to be admissible, the evidence of prior offenses must be so related in time, place and circumstance to the offense charged as to have substantial probative value in determining the guilt of the defendants. Evidence which is too remote is excluded upon the ground that the probative value is outweighed by the risk of undue prejudice.

The question of remoteness is a difficult one to decide. Remoteness in point of time may of itself, under some circumstances, render the proof inadmissible (*People* v. *Freeman*, 25 App. Div. 583, affd. on opinion below 156 N. Y. 694), although that is not the sole factor to be considered (1 Wharton on Criminal Evidence [11th ed.], § 361). " The question of remoteness, to be decided in the first instance by the trial judge, as already stated, must depend upon all the considerations, including time, the character of the evidence and all the surrounding circumstances which in his opinion ought to have a bearing upon its worthiness to be brought into the consideration and determination of the matter in contention." (*People* v. *Thompson*, 212 N. Y. 249, 255.)

It can fairly be said that the New York courts have taken a stricter view, upon the question of remoteness, than that prevailing in many other jurisdictions. In the cases in which the admission of proof of other offenses has been upheld, as bearing upon motive, intent or guilty knowledge, the courts of this State have repeatedly emphasized the point that the other offenses had been committed " at or about the same time " as the offenses charged in the indictment (*People* v. *Marino*, 271 N. Y. 317, 319, 321, 322; *People* v. *Marrin*, 205 N. Y. 275, 280, 281; *People* v. *Katz*, 209 N. Y. 311, 327).

In the only case in the Court of Appeals in which proof of prior offenses was held to be admissible in support of a gambling charge, the proof was that the defendant, charged with bookmaking in violation of section 986, had engaged in the same practice upon previous days immediately preceding the day of the offenses charged. The court held that to determine the issue of whether the " defendant was a professional gambler playing against the public or a mere player or friendly participant with others ", it was permissible to prove the " defendant's **recent** activities * * * by records written by him showing

that he bets on horses against the public, or at least against those who trust him." And the court continued: "Proof that defendant recently made written records of bets on horses establishes his continuous activity in this prohibited occupation down to and through the events that caused his arrest" (*People v. Goldstein,* 295 N. Y. 61, 65, *supra*).

The court, it will be noted, emphasized the recency of the prior offenses and the continuity between those offenses and the offenses charged. Both these elements are clearly lacking with respect to the offenses committed in 1947 and 1949 which the People were allowed to prove in this case. Those offenses had been committed so long before the offenses charged that they certainly cannot be regarded as "recent activities". The element of continuity is also lacking. Certainly, the fact that the defendants Formato, Lepore and Torre had engaged in gambling in 1947 and 1949 does not show a continuous course of conduct embracing the offenses charged to have been committed in 1952 and 1953.

The evidence offered by the prosecution with respect to the lack of legitimate occupation was all directed to the period covered by the indictments; there was no effort to cover the period from the time of the 1947 and 1949 offenses to the time of the offenses charged in the indictments. There was no affirmative evidence that the defendants did not have legitimate full-time occupations during the intervening years. On the contrary, there was some evidence that at least some of the defendants had had such occupations. In the absence of proof filling in the gap between the dates of the prior offenses and the period covered by the indictments, the admission of the proof of the convictions cannot be justified upon the ground that they established a continuous course of conduct.

If the indictment had been limited to a charge of gambling on the night of the raid of January 18, 1953, it would undoubtedly have been permissible to prove that the defendants had participated in dice games in the months immediately preceding, as tending to show the habitual conduct of the defendants and their business or professional purpose. But the indictment in this case embraces the whole period from September, 1952, to the time of the raid, so that the evidence of the games during that period was properly before the jury as proof of the offenses charged. There was no need to invoke the rule permitting the proof of prior offenses in order to get the whole series of games before the jury.

The series of games covered by the indictment appears to have been a new enterprise initiated in the fall of 1952. So far as appears from the record, there was no connection between this series of games and any prior gambling activity on the part of the defendants.

Under these circumstances, the test of remoteness with respect to unrelated gambling activities upon prior occasions ought to have been strictly applied.

We recognize that the determination of the question of remoteness rests to a large extent in the discretion of the trial court. (*People* v. *Thompson*, 212 N. Y. 249, *supra.*) But, in our view, the admission of the convictions based upon 1947 and 1949 offenses went beyond the limits of a permissible exercise of discretion by the trial court and constituted an error of law.

As to the convictions of the defendants Morello and Lepore for violation of section 970 of the Penal Law on December 29, 1951, there is a closer question. Even as to those offenses there was no showing of continuity of conduct; there was no evidence of gambling activity on the part of the defendants between the dates of the convictions and the dates of the offenses charged in the indictment. However, it might be argued that the 1951 convictions were sufficiently close in point of time to the offenses charged in the indictment to make the proof of those convictions admissible. Upon the question of the admissibility of the 1951 convictions, the court is divided but the determination of that question is not essential to the disposition of this appeal, since the errors with respect to the admission of the other convictions are of themselves sufficient to require a reversal of the judgments appealed from.

The District Attorney argues that the crime of which the defendants were convicted was really one involving status or personal condition rather than an act or failure to act, citing Lacey on Vagrancy and Other Crimes of Personal Condition (66 Harv. L. Rev. 1203). It may well be, as the writer of the cited article suggests, that " while in most prosecutions introduction of evidence tending to prove acts other than those charged is sharply restricted, the nature of crimes of personal condition compels the adoption of a liberal standard of admissibility " (*op. cit.* p. 1214). But the crime of common gambling under section 970 of the Penal Law is not a crime of status or condition. It is a misdemeanor consisting of the commission of specific acts upon specific occasions with a criminal intention of a particular kind. It is true that the statute declares that a person who is guilty of committing the specified acts is a

common gambler, but the statute does not purport to make the status or condition of being a common gambler the basis of criminal punishment. In this respect, section 970 of the Penal Law should be contrasted with subdivision 5 of section 899 of the Code of Criminal Procedure providing for an adjudication that gamblers coming within that statute are " disorderly persons " (*People* v. *Erickson,* 283 N. Y. 210).

Apart from the question of remoteness in point of time, there is a serious question as to whether three of the convictions were of such a nature as to be properly provable to show the business or professional intent of the defendants with respect to the offenses currently charged. One of the convictions proved was that the defendant Formato had been convicted in 1949 of a violation of a city ordinance in that he had been a " frequenter of a gambling establishment ". Another offense proved was that the defendant Morello had been convicted in 1951 of violating another section of the city ordinance in that he had been a " player in a gambling game ". So far as appears, these offenses consisted merely of participating as customers in a game conducted in a gambling establishment. Apparently, casual players could be convicted under the ordinance and required to pay a fine not to exceed $50 in one case and $100 in the other (cf. *People* v. *Olah,* 300 N. Y. 96). A violation of such an ordinance has little relevance in establishing that when the defendants participated in a dice game upon a later occasion, they did so with professional intention as a means of earning a livelihood. One of the other convictions was that of Formato for the crime of establishing a gambling house in 1950 in violation of the laws of Pennsylvania. While this crime undoubtedly involved an intention to maintain the gambling house as a source of income, it is of questionable relevance in establishing that, in participating in a dice game years later, the defendant did so with a business or professional intention. The method of deriving profit from the maintenance of a gambling house is very different from the method of seeking gain as an ordinary player in a dice game. It is questionable whether the commission of the former offense has substantial probative value in establishing the necessary criminal intent upon a charge of common gambling by reason of participation in a dice game.

When the probative value of the prior convictions is weighed against the serious prejudice which they entailed, it seems clear that the probative value was outweighed by the risk of the jury's giving undue weight to the prior convictions. " In any event, the danger of undue emphasis being attached to the

testimony outbalances any legitimate probative force it could have had " (cf. *People* v. *Feldman,* 296 N. Y. 127, 137).

While, as has been pointed out above, from a strictly legal point of view, the proof of convictions stands on the same footing as original evidence of the commission of other offenses, we must recognize that the proof of convictions is much more likely to be given undue weight by the jury. Original evidence of an alleged offense is open to contradiction and denial by the defendant but it is very difficult for the defendant to overcome the psychological effect of the proof of a prior conviction.

A jury may easily be led to convict a defendant charged with a crime like that of common gambling, if it is informed that the defendant had been previously convicted of the same or a similar offense. Whenever proof of a conviction is introduced, there is the risk that the jury may give it undue weight but, where the proof has legitimate relevance and is properly admitted, the defendant has to run that risk. But, because of the risk, the rule permitting the proof of prior convictions ought to be administered with great caution and the proof ought to be admitted only in cases in which the prior convictions are clearly relevant and have substantial probative value. The reasonable limits of the rule were transgressed in this case.

The proof of the prior convictions was admitted solely upon the common gambling charge, the court specifically stating to the jury at the request of the defendants' counsel that it had " nothing to do with the charge of conspiracy ". However, the prejudicial effect of the proof of the convictions was so pervasive that we cannot allow any part of the convictions to stand.

The judgments of conviction should be reversed upon the law and a new trial ordered. Settle form of the order upon notice.

FOSTER, P. J., BERGAN and ZELLER, JJ., concur.

Judgments of conviction reversed upon the law and a new trial ordered.

Settle form of the order on notice.