THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ALEXANDER M. DZIOBECKI, Appellant.

Third Department, May 8, 1957.

*E. Stewart Jones* for appellant.

*George N. Myle, District Attorney (Philip G. Coffey, Jr.,* of counsel), for respondent.

Coon, J.  The defendant was tried upon two indictments, each of which accused the defendant of grand larceny in the first degree, based upon section 36-a of the Lien Law, which reads as follows: " The funds received by a contractor from an owner for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement  *  *  *  and any contractor and any officer, director, or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law."

Defendant entered into a written contract with one D'Ambrosi in the fall of 1953 to construct for him a one-family house upon D'Ambrosi's lot in the town of Ravena, Albany County, N. Y., for $17,634, in accordance with certain detailed specifications. Concededly D'Ambrosi paid defendant $12,990 prior to April 9, 1954.  Because of outstanding indebtedness the defendant discontinued the contract, and in May, 1954, signed a release and agreed that he had been paid enough to satisfy claims and assumed to pay them.  Liens of materialmen amounting to several thousand dollars were filed against the house.  There is undisputed testimony that D'Ambrosi had to spend several thousand dollars more to complete the house in accordance with the contract specifications because the defendant left it in an incompleted state.  The total paid to the defendant, paid to complete

the house, and the amount of the liens far exceeded the total price agreed upon.

Defendant entered into a similar contract with one Swartz at about the same time and, except for differences in figures, the history of the contract is the same. Swartz paid to defendant $11,884.64 upon a contract calling for complete construction for $14,500. Liens for more than $4,000 were filed against the property and Swartz had to spend more than $5,000 after the termination of the contract to complete the house according to the specifications.

The evidence overwhelmingly establishes that defendant "failed to pay" the claims to which the statute refers. It was the contention of defendant at the trial and on this appeal that the People failed to establish that defendant applied or consented to the application of the funds paid him "for any other purpose" (than the payment of laborers, materialmen, etc.). There is evidence from which the jury could find that shortly after defendant was paid very substantial sums under the contracts the construction was halted; that at about that time defendant took a trip to New Orleans or vicinity, and that he purchased a new car. The defendant furnished statements of accounting under oath upon demand pursuant to section 36-d of the Lien Law as to the disposition of the funds paid him pursuant to each of the contracts. Under the evidence the jury would have been fully justified in finding that the statements of accounting were general, evasive, and that the amounts alleged therein to have been paid to materialmen were padded.

A case of diversion of funds may be made out by circumstantial evidence. It would be almost impossible in any case to trace and identify any specific money to an application thereof for "any other purpose." Appellant does not seriously urge that the verdict was against the weight of evidence.

Defendant particularly seeks reversal upon several alleged specific errors committed upon the trial. We regard only two of them of sufficient importance to require comment here.

Evidence was received, over objection, that defendant had entered into a similar contract with one Orsino at about the same time for construction of a house in the same vicinity. Orsino was permitted to testify that the house was left incompleted by defendant and that substantial liens were filed against it. The evidence was admitted under the theory of a common scheme or plan which tends to show intent to wrong, and to negative any theory of an isolated instance of honest and unintentional mistake. (*People* v. *Molineux,* 168 N. Y. 264; *People* v. *Goldstein,* 295 N. Y. 61; *People* v. *Buchalter,* 289 N. Y. 181.)

However, there was no evidence that defendant diverted and misapplied any of the funds paid to him under the Orsino contract. No attempt was made to establish a common scheme or plan by defendant to divert funds paid to him on construction contracts in general. So far as appears, the Orsino contract was entirely unrelated to the two contracts involved in the indictments, and the evidence that the Orsino house was left unfinished, although substantially all of the contract price had been paid, was not material or relevant to the issue of misapplication of funds paid pursuant to the contracts specified in the indictments, and the admission of the evidence was error.

Defendant also assigns as error the admission of testimony by D'Ambrosi that defendant's wife said that defendant had bought an automobile for his son-in-law while defendant was on vacation. This conversation occurred when defendant and his wife, D'Ambrosi and his wife and others were present at the scene of the partially constructed house. It appears only that defendant "was present at the time." The hearsay evidence was admitted as an admission by defendant by acquiescence because of his silence and failure to deny. Although it appears that defendant was "present" on a construction job when the statement was alleged to have been made, it does not appear clearly that he heard the statement or that he was in a position to hear it or that the statement was fully known and understood by him. Moreover, as a part of a social conversation, there was nothing about the statement which demanded a reply. Defendant was not accused of something which would move any reasonable man to feel that a denial was necessary. Under the very cases cited by respondent we think the admission of this evidence was error. (*People* v. *Koerner,* 154 N. Y. 355; *People* v. *Allen,* 300 N. Y. 222.)

However, the competent evidence of defendant's guilt, including documentary evidence, was clear and convincing. The two items of evidence which we have determined inadmissible were not particularly emphasized at the trial. We are persuaded " that the minds of the jurors were clearly directed to the true issue involved, and that they were not misled or confused to the defendant's detriment " and that the judgment should be affirmed under section 542 of the Code of Criminal Procedure. (*People* v. *Mleczko,* 298 N. Y. 153.) The judgment should be affirmed.

HALPERN, J. (dissenting). In my opinion, the error in admitting the evidence of the Orsino transaction, over the objection of the defendant's counsel, cannot be disregarded on the ground that it was not prejudicial. The proof of the failure to com-

plete the Orsino contract could only have had the effect of arousing prejudice against the defendant; it had no legitimate relevance to the issue of the defendant's guilt of the crime charged. The crime charged was not the failure to perform a building contract or the making of an improvident contract or engaging in the building business with inadequate working capital, but the crime of diverting funds in violation of section 36-a of the Lien Law. There was no proof of diversion of funds in the Orsino transaction. The proof of that transaction did not tend to show a common plan or scheme nor did it tend to prove any other material fact such as absence of accident or mistake, motive, intent, knowledge or identity (*People* v. *Formato,* 286 App. Div. 357, 364, affd. 309 N. Y. 979). Nevertheless, the court not only allowed Mr. Orsino to testify that the defendant had failed to perform his contract but the court also allowed a subcontractor to testify that he had an unpaid lien on the Orsino job. The District Attorney referred to the Orsino transaction in his summation in these prejudicial terms: ''According to Mr. Orsino's testimony, the same proposition. It follows the pattern. Go in and grab all you can grab and walk off the job. Leave the liens pile up and claims pile up. Maybe he thought that these people would throw up their hands in despair and lick their wounds and walk away. They did not.''

The court's charge did not cure the error; on the contrary, it aggravated it. The court said: '' The testimony of Mr. Orsino's transactions with the defendant are merely offered to show the overall picture, it being contended by the prosecution that the cases under indictment were part of a general plan on the part of the defendant in connection with the construction of a group of houses at Ravena.'' The jury was thus authorized to find a general plan embracing the commission of the crime for which the defendant was on trial, when there concededly was no proof of any such general plan.

The judgment of conviction should be reversed and a new trial ordered.

BERGAN and GIBSON, JJ., concur with COON, J.; HALPERN, J., dissents, in a memorandum, in which FOSTER, P. J., concurs.

Judgment affirmed.